## ROE, WARDEN v. FLORES-ORTEGA

No. 98–1441.   Argued November 1, 1999—Decided February 23, 2000

472

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, THOMAS, and BREYER, JJ., joined, and in which STEVENS, SOUTER, and GINSBURG, JJ., joined as to Part II–B. BREYER, J., filed a concurring opinion, *post*, p. 488. SOUTER, J., filed an opinion concurring in part and dissenting in part, in which STEVENS and GINSBURG, JJ., joined, *post*, p. 488. GINSBURG, J., filed an opinion concurring in part and dissenting in part, *post*, p. 493.

*Paul E. O'Connor*, Deputy Attorney General of California, argued the cause for petitioner. With him on the briefs were *Bill Lockyer*, Attorney General, *David P. Druliner*, Chief Assistant Attorney General, *Robert R. Anderson* and *Arnold O. Overoye*, Senior Assistant Attorneys General,

*Margaret Venturi,* Supervising Deputy Attorney General, and *Ward A. Campbell,* Assistant Supervising Deputy Attorney General.

*Edward C. DuMont* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben,* and *Nina Goodman.*

*Quin Denvir* argued the cause for respondent. With him on the brief were *Ann H. Voris* and *Mary French.**

JUSTICE O'CONNOR delivered the opinion of the Court.

In this case we must decide the proper framework for evaluating an ineffective assistance of counsel claim, based on counsel's failure to file a notice of appeal without respondent's consent.

I

The State of California charged respondent, Lucio Flores-Ortega, with one count of murder, two counts of assault, and a personal use of a deadly weapon enhancement allegation. In October 1993, respondent appeared in Superior Court with his court-appointed public defender, Nancy Kops, and a Spanish language interpreter, and pleaded guilty to second-degree murder. The plea was entered pursuant to a California rule permitting a defendant both to deny committing a crime and to admit that there is sufficient evidence to convict him. See *People* v. *West,* 3 Cal. 3d 595, 477 P. 2d 409 (1970). In exchange for the guilty plea, the state prosecutor moved to strike the allegation of personal use of a deadly weapon and to dismiss both assault charges. On November 10, 1993,

---

*\*Kent S. Scheidegger* and *Christine M. Murphy* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging reversal.

*Lawrence S. Lustberg, Kevin McNulty,* and *Lisa B. Kemler* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

respondent was sentenced to 15 years to life in state prison. After pronouncing sentence, the trial judge informed respondent, "You may file an appeal within 60 days from today's date with this Court. If you do not have money for Counsel, Counsel will be appointed for you to represent you on your appeal." App. 40.

Although Ms. Kops wrote "bring appeal papers" in her file, no notice of appeal was filed within the 60 days allowed by state law. See Cal. Penal Code Ann. § 1239(a) (West Supp. 2000); Cal. App. Rule 31(d). (A notice of appeal is generally a one-sentence document stating that the defendant wishes to appeal from the judgment. See Rule 31(b); Judicial Council of California, Approved Form CR–120 (Notice of Appeal-Felony) (Jan. 5, 2000), http://www.courtinfo.ca.gov/forms/documents/cr120.pdf.) Filing such a notice is a purely ministerial task that imposes no great burden on counsel. During the first 90 days after sentencing, respondent was apparently in lockup, undergoing evaluation, and unable to communicate with counsel. About four months after sentencing, on March 24, 1994, respondent tried to file a notice of appeal, which the Superior Court Clerk rejected as untimely. Respondent sought habeas relief from California's appellate courts, challenging the validity of both his plea and conviction, and (before the California Supreme Court) alleging that Ms. Kops had not filed a notice of appeal as she had promised. These efforts were uniformly unsuccessful.

Respondent then filed a federal habeas petition pursuant to 28 U. S. C. § 2254, alleging constitutionally ineffective assistance of counsel based on Ms. Kops' failure to file a notice of appeal on his behalf after promising to do so. The United States District Court for the Eastern District of California referred the matter to a Magistrate Judge, who in turn ordered an evidentiary hearing on the limited issue of whether Ms. Kops promised to file a notice of appeal on respondent's behalf. At the conclusion of the hearing, the Magistrate Judge found:

"The evidence in this case is, I think, quite clear that there was no consent to a failure to file [a notice of appeal].

.      .      .      .      .

"It's clear to me that Mr. Ortega had little or no understanding of what the process was, what the appeal process was, or what appeal meant at that stage of the game.

"I think there was a conversation [between Ortega and Kops] in the jail. Mr. Ortega testified, and I'm sure he's testifying as to the best of his belief, that there was a conversation after the pronouncement of judgment at the sentencing hearing where it's his understanding that Ms. Kops was going to file a notice of appeal.

"She has no specific recollection of that. However, she is obviously an extremely experienced defense counsel. She's obviously a very meticulous person. And I think had Mr. Ortega requested that she file a notice of appeal, she would have done so.

"But, I cannot find that he has carried his burden of showing by a preponderance of the evidence that she made that promise." App. 132–133.

The Magistrate Judge acknowledged that under precedent from the Court of Appeals for the Ninth Circuit, *United States* v. *Stearns*, 68 F. 3d 328 (1995), a defendant need only show that he did not consent to counsel's failure to file a notice of appeal to be entitled to relief. The judge concluded, however, that *Stearns* announced a new rule that could not be applied retroactively on collateral review to respondent's case. See *Teague* v. *Lane*, 489 U. S. 288 (1989). Thus, the Magistrate Judge recommended that the habeas petition be denied. App. 161. The District Court adopted the Magistrate's findings and recommendation, and denied relief. *Id.*, at 162–163.

The Court of Appeals for the Ninth Circuit reversed, reasoning that the rule it applied in *Stearns*—that a habeas petitioner need only show that his counsel's failure to file a

notice of appeal was without the petitioner's consent—tracked its earlier opinion in *Lozada* v. *Deeds*, 964 F. 2d 956 (1992), which predated respondent's conviction. 160 F. 3d 534 (1998). Because respondent did not consent to the failure to file a notice of appeal—and thus qualified for relief under *Stearns*—the court remanded the case to the District Court with instructions to issue a conditional habeas writ unless the state court allowed respondent a new appeal. We granted certiorari, 526 U. S. 1097 (1999), to resolve a conflict in the lower courts regarding counsel's obligations to file a notice of appeal. Compare *United States* v. *Tajeddini*, 945 F. 2d 458, 468 (CA1 1991) *(per curiam)* (counsel's failure to file a notice of appeal, allegedly without the defendant's knowledge or consent, constitutes deficient performance); *Morales* v. *United States*, 143 F. 3d 94, 97 (CA2 1998) (counsel has no duty to file a notice of appeal unless requested by the defendant); *Ludwig* v. *United States*, 162 F. 3d 456, 459 (CA6 1998) (Constitution implicated only when defendant actually requests an appeal and counsel disregards the request); *Castellanos* v. *United States*, 26 F. 3d 717, 719–720 (CA7 1994) (same); *Romero* v. *Tansy*, 46 F. 3d 1024, 1030–1031 (CA10 1995) (defendant does not need to express to counsel his intent to appeal for counsel to be constitutionally obligated to perfect defendant's appeal; unless defendant waived right, counsel was deficient for failing to advise defendant about appeal right); *United States* v. *Stearns, supra,* (counsel's failure to file a notice of appeal is deficient unless the defendant consents to the abandonment of his appeal).

## II

In *Strickland* v. *Washington,* 466 U. S. 668 (1984), we held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance, *id.,* at 687, and announced a now-familiar test: A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness,"

*id.*, at 688, and (2) that counsel's deficient performance prejudiced the defendant, *id.*, at 694. Today we hold that this test applies to claims, like respondent's, that counsel was constitutionally ineffective for failing to file a notice of appeal.

## A

As we have previously noted, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel." *Id.*, at 688–689. Rather, courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *id.*, at 690, and "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.*, at 689.

We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. See *Rodriquez* v. *United States*, 395 U. S. 327 (1969); cf. *Peguero* v. *United States*, 526 U. S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently. See *Jones* v. *Barnes*, 463 U. S. 745, 751 (1983) (accused has ultimate authority to make fundamental decision whether to take an appeal). The question presented in this case lies between those poles: Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?

478

The Courts of Appeals for the First and Ninth Circuits have answered that question with a bright-line rule: Counsel must file a notice of appeal unless the defendant specifically instructs otherwise; failing to do so is *per se* deficient. See, *e. g., Stearns*, 68 F. 3d, at 330; *Lozada, supra*, at 958; *Tajeddini, supra*, at 468. Such a rule effectively imposes an obligation on counsel in all cases either (1) to file a notice of appeal, or (2) to discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly. We reject this *per se* rule as inconsistent with *Strickland*'s holding that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." 466 U. S., at 688. The Court of Appeals failed to engage in the circumstance-specific reasonableness inquiry required by *Strickland*, and that alone mandates vacatur and remand.

In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning— advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. See *supra*, at 477. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

Because the decision to appeal rests with the defendant, we agree with JUSTICE SOUTER that the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal. See ABA Standards for Criminal Justice, Defense Function 4–8.2(a) (3d ed. 1993); *post*, at 490–491 (opinion concurring in part and dissenting in part). In fact, California imposes on trial counsel a *per se* duty to consult with defendants about the possibility of an appeal. See Cal. Penal Code Ann. § 1240.1(a) (West Supp. 2000). Nonetheless, "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are only guides," and imposing "specific guidelines" on counsel is "not appropriate." *Strickland*, 466 U. S., at 688. And, while States are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented, we have held that the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices. See *ibid.* We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense. See *id.*, at 689 (rejecting mechanistic rules governing what counsel must do). For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," *id.*, at 691, as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about

his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.

We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. See *id.*, at 690 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

Rather than the standard we announce today, JUSTICE SOUTER would have us impose an "almost" bright-line rule and hold that counsel "almost always" has a duty to consult with a defendant about an appeal. *Post,* at 488. Although he recognizes that "detailed rules for counsel's conduct" have no place in a *Strickland* inquiry, he argues that this "qualifi-

cation" has no application here. *Post*, at 491. According to JUSTICE SOUTER, in *Strickland* we only rejected *per se* rules in order to respect the reasonable strategic choices made by lawyers, and that failing to consult about an appeal cannot be a strategic choice. *Post*, at 491–492. But we have consistently declined to impose mechanical rules on counsel—even when those rules might lead to better representation—not simply out of deference to counsel's strategic choices, but because "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, . . . [but rather] simply to ensure that criminal defendants receive a fair trial." 466 U. S., at 689. The relevant question is not whether counsel's choices were strategic, but whether they were reasonable. See *id.*, at 688 (defendant must show that counsel's representation fell below an objective standard of reasonableness). We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal. We differ from JUSTICE SOUTER only in that we refuse to make this determination as a *per se* (or "almost" *per se*) matter.

B

The second part of the *Strickland* test requires the defendant to show prejudice from counsel's deficient performance.

1

In most cases, a defendant's claim of ineffective assistance of counsel involves counsel's performance during the course of a legal proceeding, either at trial or on appeal. See, *e. g.,* *id.,* at 699 (claim that counsel made poor strategic choices regarding what to argue at a sentencing hearing); *United States* v. *Cronic,* 466 U. S. 648, 649–650 (1984) (claim that young lawyer was incompetent to defend complex criminal

case); *Penson v. Ohio,* 488 U. S. 75, 88–89 (1988) (claim that counsel in effect did not represent defendant on appeal); *Smith v. Robbins, ante,* p. 259 (claim that counsel neglected to file a merits brief on appeal); *Smith v. Murray,* 477 U. S. 527, 535–536 (1986) (claim that counsel failed to make a particular argument on appeal). In such circumstances, whether we require the defendant to show actual prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland,* 466 U. S., at 694—or whether we instead presume prejudice turns on the magnitude of the deprivation of the right to effective assistance of counsel. That is because "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial," *Cronic, supra,* at 658, or a fair appeal, see *Penson, supra,* at 88–89. "Absent some effect of challenged conduct on the reliability of the . . . process, the [effective counsel] guarantee is generally not implicated." *Cronic, supra,* at 658.

We "normally apply a 'strong presumption of reliability' to judicial proceedings and require a defendant to overcome that presumption," *Robbins, ante,* at 286 (citing *Strickland, supra,* at 696), by "show[ing] how specific errors of counsel undermined the reliability of the finding of guilt," *Cronic, supra,* at 659, n. 26. Thus, in cases involving mere "attorney error," we require the defendant to demonstrate that the errors "actually had an adverse effect on the defense." *Strickland, supra,* at 693. See, *e. g., Robbins, ante,* at 287 (applying actual prejudice requirement where counsel followed all required procedures and was alleged to have missed a particular nonfrivolous argument); *Strickland, supra,* at 699–700 (rejecting claim in part because the evidence counsel failed to introduce probably would not have altered defendant's sentence).

2

In some cases, however, the defendant alleges not that counsel made specific errors in the course of representation, but rather that during the judicial proceeding he was—either actually or constructively—denied the assistance of counsel altogether. "The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage." *Cronic, supra,* at 659. The same is true on appeal. See *Penson, supra,* at 88. Under such circumstances, "[n]o specific showing of prejudice [is] required," because "the adversary process itself [is] presumptively unreliable." *Cronic, supra,* at 659; see also *Robbins, ante,* at 286 ("denial of counsel altogether . . . warrants a presumption of prejudice"); *Penson, supra,* at 88–89 (complete denial of counsel on appeal requires a presumption of prejudice).

Today's case is unusual in that counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself. According to respondent, counsel's deficient performance deprived him of a notice of appeal and, hence, an appeal altogether. Assuming those allegations are true, counsel's deficient performance has deprived respondent of more than a *fair* judicial proceeding; that deficiency deprived respondent of the appellate proceeding altogether. In *Cronic, Penson,* and *Robbins,* we held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because "the adversary process itself" has been rendered "presumptively unreliable." *Cronic, supra,* at 659. The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice. Put simply, we cannot accord any "'presumption of reliability,'" *Robbins, ante,* at 286, to judicial proceedings that never took place.

3

The Court of Appeals below applied a *per se* prejudice rule, and granted habeas relief based solely upon a showing that counsel had performed deficiently under its standard. 160 F. 3d, at 536. Unfortunately, this *per se* prejudice rule ignores the critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief. Cf. *Peguero* v. *United States,* 526 U. S. 23 (1999) (defendant not prejudiced by court's failure to advise him of his appeal rights, where he had full knowledge of his right to appeal and chose not to do so). Accordingly, we hold that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.

In adopting this standard, we follow the pattern established in *Strickland* and *Cronic,* and reaffirmed in *Robbins,* requiring a showing of actual prejudice (*i. e.,* that, but for counsel's errors, the defendant might have prevailed) when the proceeding in question was presumptively reliable, but presuming prejudice with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent. See *Strickland, supra,* at 493–496; *Cronic,* 466 U. S., at 658–659; *Robbins, ante,* at 286–287. Today, drawing on that line of cases and following the suggestion of the Solicitor General, we hold that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.

We believe this prejudice standard breaks no new ground, for it mirrors the prejudice inquiry applied in *Hill* v. *Lockhart*, 474 U. S. 52 (1985), and *Rodriquez* v. *United States*, 395 U. S. 327 (1969). In *Hill*, we considered an ineffective assistance of counsel claim based on counsel's allegedly deficient advice regarding the consequences of entering a guilty plea. Like the decision whether to appeal, the decision whether to plead guilty (*i. e.*, waive trial) rested with the defendant and, like this case, counsel's advice in *Hill* might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled. We held that "to satisfy the 'prejudice' requirement [of *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill, supra,* at 59. Similarly, in *Rodriquez*, counsel failed to file a notice of appeal, despite being instructed by the defendant to do so. See 395 U. S., at 328. We held that the defendant, by instructing counsel to perfect an appeal, objectively indicated his intent to appeal and was entitled to a new appeal without any further showing. Because "[t]hose whose right to an appeal has been frustrated should be treated exactly like any other appellan[t]," we rejected any requirement that the would-be appellant "specify the points he would raise were his right to appeal reinstated." *Id.,* at 330. See also *Evitts* v. *Lucey*, 469 U. S. 387 (1985) (defendant entitled to new appeal when counsel's deficient failure to comply with mechanistic local court rules led to dismissal of first appeal).

As with all applications of the *Strickland* test, the question whether a given defendant has made the requisite showing will turn on the facts of a particular case. See 466 U. S., at 695–696. Nonetheless, evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination. We recognize that

the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal. See *Hill, supra,* at 59 (when, in connection with a guilty plea, counsel gives deficient advice regarding a potentially valid affirmative defense, the prejudice inquiry depends largely on whether that affirmative defense might have succeeded, leading a rational defendant to insist on going to trial). But, while the performance and prejudice prongs may overlap, they are not in all cases coextensive. To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.

By the same token, although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed, a defendant's inability to "specify the points he would raise were his right to appeal reinstated," *Rodriquez,* 395 U. S., at 330, will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed. See *ibid.;* see also *Peguero, supra,* at 30 (O'CONNOR, J., concurring) ("To require defendants to specify the grounds for their appeal and show that they have some merit would impose a heavy burden on defendants who are often proceeding *pro se* in an initial [habeas] motion"). We similarly conclude here that it is unfair to *require* an indigent, perhaps *pro se,* defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal. Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed.

## III

The court below undertook neither part of the *Strickland* inquiry we have described, but instead presumed both that Ms. Kops was deficient for failing to file a notice of appeal without respondent's consent and that her deficient performance prejudiced respondent. See 160 F. 3d, at 536. JUSTICE SOUTER finds Ms. Kops' performance in this case to have been "derelict," presumably because he believes that she did not consult with respondent about an appeal. *Post*, at 489. But the Magistrate Judge's findings do not provide us with sufficient information to determine whether Ms. Kops rendered constitutionally inadequate assistance. Specifically, the findings below suggest that there may have been some conversation between Ms. Kops and respondent about an appeal, see App. 133; see also 160 F. 3d, at 535 (Ms. Kops wrote " 'bring appeal papers' " in her file), but do not indicate what was actually said. Assuming, *arguendo*, that there was a duty to consult in this case, it is impossible to determine whether that duty was satisfied without knowing whether Ms. Kops advised respondent about the advantages and disadvantages of taking an appeal and made a reasonable effort to discover his wishes. Cf. *Strickland, supra*, at 691 ("inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . decisions"). Based on the record before us, we are unable to determine whether Ms. Kops had a duty to consult with respondent (either because there were potential grounds for appeal or because respondent expressed interest in appealing), whether she satisfied her obligations, and, if she did not, whether respondent was prejudiced thereby. Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER, concurring.

I write to emphasize that the question presented concerned the filing of a "notice of appeal *following a guilty plea.*"   Pet. for Cert. i (emphasis added).   In that context I agree with the Court.   I also join its opinion, which, in my view, makes clear that counsel does "almost always" have a constitutional duty to consult with a defendant about an appeal after a trial.   *Post* this page (SOUTER, J., concurring in part and dissenting in part); cf. *ante*, at 479–481.

JUSTICE SOUTER, with whom JUSTICE STEVENS and JUSTICE GINSBURG join, concurring in part and dissenting in part.

I join Part II–B of the Court's opinion, but I respectfully dissent from Part II–A.   As the opinion says, the crucial question in this case is whether, after a criminal conviction, a lawyer has a duty to consult with her client about the choice to appeal.   The majority's conclusion is sometimes; mine is, almost always in those cases in which a plea of guilty has not obviously waived any claims of error.[1]   It is unreasonable for a lawyer with a client like respondent Flores-Ortega to walk away from her representation after trial or after sentencing without at the very least acting affir-

---

[1] I say "almost" always, recognizing that there can be cases beyond the margin: if a legally trained defendant were convicted in an error-free trial of an open-and-shut case, his counsel presumably would not be deficient in failing to explain the options.   This is not what we have here.   Nor is this a case in which the judge during the plea colloquy so fully explains appeal rights and possible issues as to obviate counsel's need to do the same; such a possibility is never very likely and exists only at the furthest reach of theory, given a defendant's right to adversarial representation, see *Smith* v. *Robbins, ante,* at 296–297 (SOUTER, J., dissenting).   Finally, of course, there is no claim here that Flores-Ortega waived his right to appeal as part of his plea agreement; although he pleaded guilty, the record shows that he and the State argued before the trial court for different sentences, and he had little understanding of the legal system.   The fact of the plea is thus irrelevant to the disposition of the case.

matively to ensure that the client understands the right to appeal.

Where appeal is available as a matter of right, a decision to seek or forgo review is for the convict himself, not his lawyer, *Jones* v. *Barnes*, 463 U. S. 745, 751 (1983), who owes a duty of effective assistance at the appellate stage, *Evitts* v. *Lucey*, 469 U. S. 387, 396 (1985); *Penson* v. *Ohio*, 488 U. S. 75, 85 (1988). It follows, as the majority notes, that if a defendant requests counsel to file an appeal, a lawyer who fails to do so is, without more, ineffective for constitutional purposes. But, as the Court says, a lesser infidelity than that may fail the test of lawyer competence under *Strickland* v. *Washington*, 466 U. S. 668 (1984), which governs this case. I think that the derelict character of counsel's performance in this case is clearer than the majority realizes.

In *Strickland*, we explicitly noted that a lawyer has a duty "to consult with the defendant on important decisions . . . in the course of the prosecution." *Id.*, at 688. The decision whether to appeal is one such decision. Since it cannot be made intelligently without appreciating the merits of possible grounds for seeking review, see *Peguero* v. *United States*, 526 U. S. 23, 30–31 (1999) (O'CONNOR, J., concurring); *Rodriquez* v. *United States*, 395 U. S. 327, 330 (1969), and the potential risks to the appealing defendant, a lay defendant needs help before deciding. If the crime is minor, the issues simple, and the defendant sophisticated, a 5-minute conversation with his lawyer may well suffice; if the charge is serious, the potential claims subtle, and a defendant uneducated, hours of counseling may be in order. But only in the extraordinary case will a defendant need no advice or counsel whatever.

To the extent that our attention has been directed to statements of "prevailing professional norms," *Strickland* v. *Washington*, 466 U. S., at 688 (*Strickland*'s touchstone of reasonable representation, see *ibid.*), they are consistent with common sense in requiring a lawyer to consult with a

client before the client makes his decision about appeal. Thus, ABA Standards for Criminal Justice 21–2.2(b) (2d ed. 1980):

> "Defense counsel should advise a defendant on the meaning of the court's judgment, of defendant's right to appeal, on the possible grounds for appeal, and of the probable outcome of appealing. Counsel should also advise of any posttrial proceedings that might be pursued before or concurrent with an appeal. While counsel should do what is needed to inform and advise defendant, the decision whether to appeal, like the decision whether to plead guilty, must be the defendant's own choice."

See also ABA Standards for Criminal Justice, Defense Function 4–8.2(a) (3d ed. 1993) (stating that trial counsel "should explain to the defendant the meaning and consequences of the court's judgment and defendant's right of appeal" and "should give the defendant his or her professional judgment as to whether there are meritorious grounds for appeal and as to the probable results of an appeal"); id., 4–8.2, Commentary ("[C]ounsel [has the duty] to discuss frankly and objectively with the defendant the matters to be considered in deciding whether to appeal. . . . To make the defendant's ultimate choice a meaningful one, counsel's evaluation of the case must be communicated in a comprehensible manner. . . . [T]rial counsel should always consult promptly with the defendant after making a careful appraisal of the prospects of an appeal"); ABA Standards for Criminal Justice 21–3.2(b)(i).

So also the ABA Model Code of Professional Responsibility, EC 2–31 (1991), provides that: "Trial counsel for a convicted defendant should continue to represent his client by advising whether to take an appeal . . . ." Likewise ABA Model Rule of Professional Conduct 1.3, Comment (1996): "[I]f a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been spe-

cifically instructed concerning pursuit of an appeal, the lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter." Restatement (Third) of the Law Governing Lawyers § 31(3) (Proposed Final Draft No. 1, Mar. 29, 1996) embodies the same standards: "A lawyer must notify a client of decisions to be made by the client . . . and must explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Indeed, California has apparently eliminated any option on a lawyer's part to fail to give advice on the appeal decision (whether the failure be negligent or intentional). California Penal Code Ann. § 1240.1(a) (West Supp. 2000) provides that trial counsel has a duty to "provide counsel and advice as to whether arguably meritorious grounds exist for reversal or modification of the judgment on appeal." California thus appears to have adopted as an unconditional affirmative obligation binding all criminal trial counsel the very standard of reasonable practice expressed through the Restatement and the ABA standards.

I understand that under *Strickland*, "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable, but they are only guides," and that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." 466 U. S., at 688–689. But that qualification has no application here.

While *Strickland*'s disclaimer that no particular set of rules should be treated as dispositive respects the need to defer to reasonable "strategic choices" by lawyers, *id.*, at 690, no such strategic concerns arise in this case. Strategic choices are made about the extent of investigation, the risks of a defense requiring defendant's testimony and exposure to cross-examination, the possibility that placing personal

background information before a jury will backfire, and so on. It is not, however, an issue of "strategy" to decide whether or not to give a defendant any advice before he loses the chance to appeal a conviction or sentence. The concern about too much judicial second-guessing after the fact is simply not raised by a claim that a lawyer should have counseled her client to make an intelligent decision to invoke or forgo the right of appeal or the opportunity to seek an appeal.

The Court's position is even less explicable when one considers the condition of the particular defendant claiming *Strickland* relief here. Flores-Ortega spoke no English and had no sophistication in the ways of the legal system. The Magistrate Judge found that "[i]t's clear . . . that Mr. Ortega had little or no understanding of what the process was, what the appeal process was, or what appeal meant." App. 133. To condition the duty of a lawyer to such a client on whether, *inter alia,* "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," *ante,* at 480, is not only to substitute a harmless-error rule for a showing of reasonable professional conduct, but to employ a rule that simply ignores the reality that the constitutional norm must address.[2] Most criminal defendants, and certainly this one, will be utterly incapable of making rational judgments about appeal without guidance. They cannot possibly know what a rational decisionmaker must know unless they are given the benefit of a professional assessment of chances of success and risks of trying. And they will often (indeed, usually) be just as bad off if they seek relief on habeas after failing to take a direct appeal,

---

[2] The Court holds that a duty to consult will also be present if "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Ante,* at 480. Because for most defendants, and certainly for unsophisticated ones like Flores-Ortega who are unaware even of what an appeal means, such a demonstration will be a practical impossibility, I view the Court as virtually requiring the defendant to show the existence of some nonfrivolous appellate issue.

having no right to counsel in state postconviction proceedings. See *Pennsylvania* v. *Finley*, 481 U. S. 551, 557 (1987); *Murray* v. *Giarratano*, 492 U. S. 1, 12 (1989); cf. *Peguero* v. *United States*, 526 U. S., at 30 (O'CONNOR, J., concurring) ("To require defendants to specify the grounds for their appeal and show that they have some merit would impose a heavy burden on defendants who are often proceeding *pro se* in an initial 28 U. S. C. § 2255 motion").

In effect, today's decision erodes the principle that a decision about appeal is validly made only by a defendant with a fair sense of what he is doing. Now the decision may be made inadvertently by a lawyer who never utters the word "appeal" in his client's hearing, so long as that client cannot later demonstrate (probably without counsel) that he unwittingly had "nonfrivolous grounds" for seeking review. This state of the law amounts to just such a breakdown of the adversary system that *Strickland* warned against. "In every case the court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." 466 U. S., at 696; see also *Rodriquez* v. *United States*, 395 U. S., at 330; *Penson* v. *Ohio*, 488 U. S., at 85.

I would hold that in the aftermath of the hearing at which Flores-Ortega was sentenced, his lawyer was obliged to consult with her client about the availability and prudence of an appeal, and that failure to do that violated *Strickland*'s standard of objective reasonableness. I therefore respectfully dissent from Part II–A of the majority's opinion.

JUSTICE GINSBURG, concurring in part and dissenting in part.

This case presents the question whether, after a defendant pleads guilty or is convicted, the Sixth Amendment permits defense counsel simply to walk away, leaving the defendant uncounseled about his appeal rights. The Court is not

deeply divided on this question. Both the Court and JUS-
TICE SOUTER effectively respond: hardly ever. Because the
test articulated by JUSTICE SOUTER provides clearer guid-
ance to lower courts and to counsel, and because I think it
plain that the duty to consult was not satisfied in this case,
I join JUSTICE SOUTER's opinion.