**UNITED STATES of America,**

v.

**Lonnie Edward MALONE, Defendant.**

**Case No. 1:07CR00037.**

United States District Court,
W.D. Virginia,
Abingdon Division.

May 24, 2010.

---

Zachary T. Lee, Assistant United States Attorney, Abingdon, VA, for the United States.

Helen E. Phillips, McGlothlin and Phillips, PLLC, Lebanon, VA, for Defendant.

## OPINION

JAMES P. JONES, Chief Judge.

By prior opinion and order,[1] I dismissed all but one of the claims raised in this Motion to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C.A. § 2255 (West 2006), based upon my finding that, pursuant to a written plea agreement, the defendant had entered a valid waiver of his right to raise a collateral challenge to the judgment or sentence pursuant to § 2255. As to the remaining claim, that counsel failed to file a notice of appeal after the defendant asked him to do so, I conducted an evidentiary hearing. This opinion sets forth the findings of fact and conclusions of law upon which I base my determination that the defendant is not entitled to relief under § 2255.

### I

Because my previous opinion included a detailed account of the procedural history in this case, I offer only an abbreviated version here, supplemented with facts developed at the March 2, 2010 evidentiary hearing.

Lonnie Edward Malone was charged in June 2007 with the distribution of crack cocaine, possession of firearms in furtherance of a drug trafficking crime, and related offenses. He retained counsel and pleaded not guilty. Plea negotiations failed to produce an agreement. Malone steadfastly denied selling drugs, maintaining that the drugs found in his home were for his own consumption. The government then obtained a superseding indictment that added the charge that Malone had conspired with others to distribute methamphetamine and crack cocaine.

Shortly before a scheduled trial on the superseding indictment, Malone entered into a plea agreement with the government by which he pleaded guilty to Count One, possession of a short-barreled shotgun in furtherance of a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c)(1)(A) and (B) (West Supp.2009), and to conspiring to distribute and possess with intent to distribute 50 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C.A. §§ 841(b)(1)(B) and 846 (West 1999 & Supp.2009), a lesser included offense of Count Six. Malone's attorney advised him that this plea agreement was in his best interests, because it capped his mandatory minimum sentence exposure at 15 years of imprisonment and allowed him a reduction in his offense level for acceptance of responsibility.

In the course of conducting a standard plea colloquy on February 29, 2008, I discussed the plea agreement's terms and sentencing procedures with Malone. Paragraph 1 of the plea agreement indicated that the maximum sentence for the gun charge was life imprisonment, with a mandatory minimum sentence of 10 years, and that the maximum sentence for the conspiracy offense was 40 years of imprisonment, with a mandatory minimum of five

---

1. *United States v. Malone*, No. 1:07CR00037, 2009 WL 4571795 (W.D.Va. Dec. 7, 2009).

years. Paragraphs 4 and 19 of the plea agreement indicated Malone's understanding that the court, in its discretion, would determine the appropriate sentence, with reference to the sentencing guideline range applicable to his case, up to the statutory maximum. Malone signed the plea agreement and affirmed under oath in court that he understood its terms.[2] I explained to Malone that until I determined at sentencing what the guideline range was, there was no guarantee as to what his sentence would be, except that I would be required to sentence him to at least 15 years in prison. Malone indicated that he understood. I determined that he was entering a knowing and voluntary plea and accepted it.

I sentenced Malone on May 19, 2008. The presentence investigation report ("PSR") indicated that Malone's sentencing range under the advisory sentencing guidelines for the conspiracy count was 210 to 262 months. I sentenced Malone at the bottom of that range to 210 months imprisonment. With a consecutive, mandatory minimum sentence of 120 months on the gun charge, the total sentence imposed was 330 months imprisonment. At the close of the hearing, I stated:

I advise the defendant that he has waived his right to appeal this sentence, and that waiver is binding unless the sentence exceeds the statutory maximum or is based on a constitutionally impermissible factor. If the right of appeal does exist, a person who is unable to pay the costs may apply for leave to appeal without pre-payment of such costs. Any notice of appeal must be filed within ten days of the entry of judgment, or within ten days of a notice of appeal by the Government. If requested, the clerk will prepare and file a notice of appeal on behalf of the defendant.

(Sent. Tr. 14–15, May 19, 2008.)

Immediately after sentencing, Malone asked his defense counsel about appealing the sentence and said that he wanted it appealed. Counsel told Malone that he would come to the jail that night to discuss the matter.[3] Pamela Malone, the defendant's daughter-in-law, saw Malone talking with his attorney, but did not hear any of their conversation.

Pamela met with the attorney outside the courthouse on the sidewalk and asked him how much time Malone received. The attorney advised her that Malone had been sentenced to 27 and one-half years of imprisonment. Pamela told the attorney that she understood Malone would be sentenced to only 15 years. The attorney told her, "We knew it could go up." The attorney told Pamela that Malone had a right to appeal, but that counsel would not file it, because Malone had signed the plea bargain. Pamela did not speak further with the attorney that day. She later talked with him by telephone about picking up documents from Malone's file, but she had

2. On cross-examination at the evidentiary hearing, Malone testified that in entering into the plea agreement, he had understood that he was pleading guilty to conspiracy to distribute 50 grams or less, not 50 grams or more, of methamphetamine, and that he believed the agreement assured him of a sentence of only 15 years. He admitted, however, that he never indicated to the court during the plea hearing any lack of understanding of the agreement's terms and that counsel had read the entire agreement to him.

3. The attorney testified that he does not remember this conversation after sentencing. He testified that he had previously discussed with Malone the paragraph of the plea agreement waiving the right to appeal, but that if Malone had asked him to file an appeal, counsel would have discussed the terms of the plea agreement with him again. Particularly because the attorney's version of events is not inconsistent with Malone's account, I will accept Malone's version of the conversation.

no further discussion with him about a possible appeal.

The defendant's son, Joseph Malone, was also present at the defendant's sentencing hearing and followed defense counsel out of the courthouse to talk with him. Joseph told the attorney that according to his understanding, the defendant had bargained for a 15–year sentence. Counsel told Joseph that the plea agreement recognized that the sentence could be more than 15 years. Joseph did not talk to the attorney that day about filing an appeal.

When counsel did not come to the jail that evening, Malone did not try to call counsel on the telephone about an appeal, because he knew that the attorney would not take collect calls. Instead, Malone called Joseph and asked him to contact the attorney about an appeal. On his father's behalf, Joseph went to see the attorney in his office a day or two after sentencing. They talked for 10 or 15 minutes. The attorney told Joseph that filing an appeal would be a breach of the plea agreement that could result in Malone losing the sentencing benefit he had gained for acceptance of responsibility, which would make his guideline range higher. The attorney told Joseph that for these reasons, he would not further represent Malone in an appeal and that the defendant should feel free to seek counsel elsewhere. Joseph asked counsel if he could get copies of his father's file. Some time later, the attorney's office called Joseph to tell him that the copies were ready, and he came to the office to retrieve the files. Joseph had no further discussions with the attorney about filing an appeal on Malone's behalf.

On May 23, 2008, four days after the sentencing hearing, the attorney wrote a letter addressed to Malone at the local jail in Abingdon, Virginia, where Malone was being held. The letter stated:

As you are aware, Judge Jones rejected my arguments that you should receive no more than the mandatory minimum sentence required pursuant to your plea agreement. In particular I argued that your case was very similar to that of Valerie Chapman, and in fact your presentence report attributes her involvement in the conspiracy to distribute methamphetamine to consist of the exact same drug weight as yours. However, Judge Jones distinguished the circumstances of your case from those of Ms. Chapman and imposed a sentence on the conspiracy count consistent with the low end of your guidelines.

While technically you have the right to note an appeal to Judge Jones' decision to the United States Court of Appeals for the Fourth Circuit, your plea agreement specifically waives the right of an appeal so long as the sentence is within the statutory permissible sentence. Pursuing such an appeal would likely result in the government moving to revoke the acceptance of responsibility credit which you received, and seek a longer sentence. Without the acceptance of responsibility credit, your sentencing guidelines range would increase.... For these reasons, I do not believe it to be in your best interests to note an appeal since your waiver of rights alone would be grounds for the Fourth Circuit to dismiss it.

I have spoken with your son at your request and advised that if you wished to pursue the appeal it would be necessary to employ other counsel. The appeal must be noted within ten (10) days of the sentencing date, which was May 20, 2008.

(Def.'s Ex 1, Mar. 2, 2010.) [4]

The Tuesday after sentencing, on May 27, 2008, Malone left the local jail in

---

4. The attorney testified that his file included    only a draft of the May 23, 2008 letter to

Abingdon for transportation to a county jail in Kentucky. A month or more after that, he received a letter from the attorney, which I find is likely the same letter that the attorney sent to the local jail, which had been forwarded to the Kentucky jail.[5] By that time, the appeal period had expired. Malone did not write any letters to counsel about an appeal. After his later transfer to a federal prison in North Carolina, he wrote to the attorney to inquire about getting a sentence reduction.

## II

To state a claim for relief under § 2255, a federal defendant must prove that one of the following occurred: (1) His sentence was "imposed in violation of the Constitution or laws of the United States"; (2) The "court was without jurisdiction to impose such sentence"; or (3) The "sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.A § 2255(a). In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958).

"[A]n attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a notice of appeal even though the defendant may have waived his right to appeal." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir.2007). I find that after the sentence was imposed, Malone did not direct his attorney to file a notice of appeal. He said he wanted to

appeal and asked about an appeal, but these actions do not equate to a directive for counsel to file a notice of appeal, and counsel expressly did not agree to do so. Therefore, to the extent that Malone has alleged that counsel was per se ineffective for failing to file a notice of appeal after being asked to do so, his claim is without merit and must be dismissed.

In his written submissions and at the hearing, however, Malone argued more generally that counsel provided ineffective assistance related to the issue of a possible appeal. The legal analysis applicable to such claims is well established:

> In order to establish a Sixth Amendment violation based on counsel's failure to appeal, [the defendant] must prove that (1) counsel was ineffective and (2) but for counsel's ineffectiveness, an appeal would have been filed.... When a client does not specifically instruct counsel to appeal, however, whether counsel has been ineffective by failing to appeal depends upon whether counsel in fact consulted with the defendant about an appeal. In this context, "consult" convey[s] a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has not consulted with his client, the court must then ask whether the failure to consult itself constitutes deficient performance.... The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when

Malone, with handwritten corrections on it, but assured the court that a final version of the letter was prepared and mailed. I find as a matter of fact that the final version of the letter was mailed on Friday, May 23, 2008, to Malone at the local jail in Abingdon.

**5.** The attorney did not have any record of writing another letter. While Malone did not

have at the hearing the letter he says he received at the Kentucky jail, his recollection of it matches the attorney's May 23, 2008 letter sent to the Abingdon jail. It is possible that the local jail forwarded it to the Kentucky jail or that it came back to the attorney's office and his staff sent it on to the Kentucky jail.

counsel has reason to believe either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*United States v. Witherspoon,* 231 F.3d 923, 926 (4th Cir.2000) (internal quotation marks and citations omitted).

■ A defendant who demonstrates that counsel had a constitutional duty to consult with him about an appeal, but failed to fulfill that duty, must also demonstrate prejudice—a reasonable probability that, but for counsel's deficient conduct, the defendant would have timely appealed. *Roe v. Flores–Ortega,* 528 U.S. 470, 484, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). The essential nature of such a claim is that counsel's deficient performance caused the defendant to forfeit an appeal that he otherwise would have taken. *Id.; cf. Peguero v. United States,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (holding that defendant not prejudiced by court's failure to advise him of his appeal rights, where he had full knowledge of his right to appeal and chose not to do so).

Although Malone expressed an interest in appealing immediately after sentencing, the attorney did not meet with his client at that time to discuss the advantages and disadvantages of pursing an appeal. He also did not go to the jail in person to consult with Malone. However, I find that counsel's post-sentencing actions, as a whole, fulfilled his duty under *Flores–Ortega* to consult with Malone about an appeal.

When Malone's son and daughter-in-law asked the attorney for information about the sentence and a possible appeal on Malone's behalf, the attorney expressly advised them that he would not be filing a notice of appeal because of Malone's plea agreement. He also told Joseph that if the defendant wanted to appeal, he should seek other counsel. He warned Joseph, however, that if his father appealed the sentence and, in so doing, breached the plea agreement, he might face a longer sentence. The attorney would have reasonably believed that this information would be conveyed promptly to Malone by his family members.

Nevertheless, the attorney also prepared a detailed letter to Malone himself, advising him that counsel would not be filing a notice of appeal. The letter expressly advised Malone that if he wanted to pursue an appeal, he would need to hire another attorney and note the appeal within 10 days from the day of sentencing.[6]

The May 23, 2008 letter also discussed issues relevant to Malone's decision of whether or not to appeal. First, counsel cited reasons that an appeal offered little or no advantage. He explained why I had sentenced Malone to more than the mandatory minimum sentence on the drug count, while sentencing a codefendant to less time based on a substantial assistance motion by the government. He also discussed the fact that the plea agreement waiver of the right to appeal provided grounds for the Fourth Circuit to dismiss any appeal of the sentence.

The attorney also advised Malone of the possible adverse effects an appeal might have on his sentence. Specifically, in the letter, counsel warned Malone that if he appealed the sentence, the government would likely move for revocation of the reduction to the guideline range based on acceptance of responsibility, which would result in a greater sentencing range. This advice was not technically accurate. In

---

**6.** Counsel's mistaken statement in the letter that Malone was sentenced on May 20, 2008, is not material, since Malone had personal knowledge of the date on which he was sentenced.

fact, I know of no procedure by which the government could have obtained a new sentencing for the defendant, at which time it could have refused to move for an acceptance of responsibility reduction. Under paragraph 17(d) of the plea agreement, the government could have reinstated Counts Two, Three, Four, and Five of the superceding indictment, which counts were dismissed on the government's motion at sentencing, but the conduct set forth in those counts was taken into account in determining the defendant's initial offense level. It is possible, however, that at the time of sentencing on the reinstated counts, the defendant would not have received full credit for acceptance of responsibility by virtue of his appeal, so that his total offense level would have been higher, thus perhaps resulting in a higher total sentence. For these reasons, while I find that the attorney's advice was technically mistaken, it nevertheless correctly informed Malone of the fact that an appeal could ultimately result in a longer sentence. Moreover, Malone does not claim that he was deterred from an appeal by any erroneous advice from the attorney about the extent to which an appeal might adversely affect his sentence.

In short, the attorney reasonably believed that the May 23, 2008 letter, bolstered by his prior discussions with Pamela and Joseph Malone, satisfied his duty to consult with Malone about an appeal. Nothing in the record indicates that the attorney was aware of any nondelivery of his letter or any failure by Malone's family members to pass on his oral advice in time for Malone to take other action to file a notice of appeal. The burden of proof rested on Malone in this § 2255 action to offer evidence demonstrating that counsel's representation was professionally deficient. *Witherspoon*, 231 F.3d at 926; *Miller*, 261 F.2d at 547. Malone has failed to carry that burden.

■ Moreover, Malone also fails to demonstrate prejudice under *Flores–Ortega*. Nothing in the record supports a finding that Malone ever believed that counsel would be preparing a notice of appeal on his behalf or relied on him to do so. The evidence is that he did not direct counsel to file a notice of appeal; that counsel promised nothing more than discussion of the appeal issue; and that counsel advised Malone (by letter) and his family members (in person) during the appeal time, that counsel would not be filing a notice of appeal. I had already advised Malone of the procedures for filing a notice of appeal and the deadline for filing it. Counsel reiterated this information to Malone in his letter. Furthermore, since Joseph Malone initiated the discussion with counsel about appeal options at his father's request, I find it is more likely than not that Joseph relayed counsel's advice to Malone.

Malone does not claim that he was unaware of the deadline by which he needed to file his notice of appeal or the procedures for doing so. He also offers no evidence that he was incapable of having a notice of appeal filed on his behalf, either by contacting the clerk's office himself or through a family member to ask that an appeal be noted or by obtaining other counsel to note the appeal. On this record, I cannot find by a preponderance of the evidence that the attorney's conduct caused Malone to forfeit an appeal that he otherwise would have taken. Therefore, he has not made the necessary showing of prejudice, and his claim fails. *Flores–Ortega*, 528 U.S. at 484, 120 S.Ct. 1029.

### III

For these reasons, I find no ground upon which the defendant is entitled to relief under § 2255. Accordingly, his motion will be denied.

A separate Final Order will be entered herewith.