[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14510

Non-Argument Calendar

_____

LENDEN PENDERGRASS,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-61637-FAM

_____

Before WILLIAM PRYOR, Chief Judge, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Lenden Pendergrass appeals the denial of his motion to vacate his convictions for conspiracy to possess with intent to distribute fentanyl and possessing with intent to fentanyl and cocaine base, 21 U.S.C. §§ 841(a)(1), 846, and possessing a firearm and ammunition as a convicted felon, 18 U.S.C. § 922(g)(1). Pendergrass argues that his defense counsel was ineffective because he failed to follow Pendergrass's instructions to appeal his sentence and alternatively failed to adequately consult with Pendergrass about an appeal. We affirm.

## I. BACKGROUND

Pendergrass pleaded guilty to three counts of conviction in exchange for the dismissal of eight counts of possessing with intent to distribute a controlled substance, 21 U.S.C. § 841(b)(1)(C), and one count of possessing a firearm in furtherance of a drug trafficking conspiracy, 18 U.S.C. § 924(c). His written plea agreement contained an appeal waiver and provided that the government would recommend a sentence at the low end of his advisory-guideline range. The government also agreed to evaluate his cooperation and, if warranted, to "make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing

pursuant to Rule 35 of the Federal Rules of Criminal Procedure." After reviewing the appeal waiver and confirming that Pendergrass understood that he faced a mandatory-minimum sentence of 15 years and a maximum sentence of life imprisonment, the district court accepted Pendergrass's plea of guilty.

Pendergrass's presentence investigation report initially provided an advisory guideline range of life imprisonment. But Pendergrass, through counsel H. Scott Hecker, made several successful objections to the report before sentencing. His revised report provided an advisory guideline range of 360 months to life imprisonment.

At his sentencing hearing, Pendergrass successfully objected to a role enhancement, which the district court stated it "could have gone either way on." As a result, his advisory guideline range was reduced to 292 months to 365 months. The government argued for 292 months, and Pendergrass requested a sentence of 15 years. The district court sentenced Pendergrass to 292 months of imprisonment. The district court reminded Pendergrass of his appeal waiver but advised him that any notice of appeal must be filed within 14 days. Pendergrass confirmed that he understood. Pendergrass did not appeal.

A year later, Pendergrass timely moved *pro se* to vacate his conviction. 28 U.S.C. § 2255. Pendergrass argued that Hecker was ineffective for failing to file a notice of appeal "upon request." The government requested an evidentiary hearing, and the magistrate judge appointed Pendergrass counsel.

At the evidentiary hearing, Hecker testified that he had practiced criminal law in federal court for 35 years. He was retained by Pendergrass's nephew, Tavaris Welch, and agreed to represent Pendergrass in entering a change of plea for $10,000. Hecker produced an invoice showing that he received payments of $6,900, $2,100, and $500. Although Pendergrass still owed $500, Hecker "just let it go at that point." The goal of the representation was to avoid a life sentence because it was "a very severe case" in which several deaths were connected to Pendergrass's acts.

Hecker testified that, after the sentencing hearing, Pendergrass asked, "Can we appeal?" Hecker responded, "Appeal what?" and Pendergrass said, "The motherf*****g 24 years the judge just gave me." Hecker advised, "We have an appeal waiver. The judge just granted every one of our objections. And, if you appeal, the [g]overnment can argue that the objections that we just won were improper, and you could end up with a larger sentence." Hecker also cautioned, "[Y]ou have a Rule 35, and I don't know how your appeal would affect your Rule 35." Hecker said that the discussion lasted "a few minutes, we talked at that point. And that was it. That was the only time I heard about an appeal."

On cross-examination, Hecker explained that the process of getting the balance of his fee paid "had been going on for a couple of weeks with [Welch]," so the $2,100 payment he received from Welch the day after the sentencing hearing "was just a payment that came in" and "had nothing to do with an appeal."

On redirect, Hecker said that if the district court had overruled his role enhancement objection or attributed a death to Pendergrass, then "the case had to go up on appeal." But because the district court sided with Pendergrass on all of his objections, Hecker could not think of any nonfrivolous reason to appeal. But even then, Hecker would have filed the notice of appeal if Pendergrass had asked him to because "[i]t is not an effort to go do a notice of appeal." Hecker also explained that, in his view, there was a difference between asking whether one "can appeal" and "directing someone to appeal." And Hecker "didn't take that as an order to appeal. That was a question."

Pendergrass recalled the discussion differently. Pendergrass testified that, while in the courtroom after sentencing, he asked Hecker, "What can we do now?" and Hecker said, "We can try to do an appeal." Pendergrass said, "Okay. No problem. The money will be no problem. I will have my brother and my nephew bring you the money you tell them you need." Later that day, Pendergrass called his brother to confirm that he would pay for the appeal. And the next day, Pendergrass emailed Hecker and "asked him what I was going to do that—my appeal, he says yes." But Pendergrass said Hecker did not respond to his email, and they had no other communication during the following two weeks.

On cross-examination, Pendergrass said he requested the emails with Hecker six or seven months later, but "they were gone." And although Hecker had explained to him that he faced a minimum sentence of 15 years and a maximum sentence of life and

the district court confirmed the same at the change of plea hearing, Pendergrass had hoped to get 10 years in exchange for cooperating with the government. Pendergrass acknowledged that Hecker had communicated with him on one occasion after sentencing to apprise him of discussions with the government about filing a motion to reduce his sentence based on his substantial assistance.

Although Welch was called to testify, he did not appear. But Pendergrass's brother, Jackie Williams, testified that he and Welch met Hecker on two or three occasions to pay him. About one week after sentencing, Pendergrass called Williams about needing money for an appeal. Williams and Welch met Hecker at his law office. Welch "did most of the talking." When Welch gave Hecker $2,500, Hecker said, "That is what, for the appeal." Welch gave the receipt to his mother for safekeeping, so Williams did not have it. And Williams relayed to Pendergrass "what we [] did." On cross-examination, Williams acknowledged that he had been convicted of at least 15 felonies and said that he did not know that Pendergrass had been cooperating with the government.

The magistrate judge found Hecker's testimony credible and supported by the record. The magistrate judge found that Pendergrass did not direct Hecker to appeal, but instead asked whether he could appeal and, based on Hecker's advice, was dissuaded from doing so. The district court adopted the magistrate judge's finding that Hecker adequately consulted with Pendergrass and denied Pendergrass's motion.

## II. STANDARD OF REVIEW

"In a 28 U.S.C. § 2255 proceeding, we review a district court's legal conclusions *de novo* and factual findings for clear error." *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008).

## III. DISCUSSION

Pendergrass makes two arguments. First, Pendergrass argues that the magistrate judge clearly erred in finding that he did not instruct Hecker to file a notice of appeal. Second, Pendergrass argues that Hecker's discussion with him about an appeal was inadequate under *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). These arguments fail.

The magistrate judge did not clearly err in finding that Pendergrass did not instruct Hecker to file a notice of appeal. The record supports the finding that Hecker's account was more credible based on his lengthy experience as a criminal defense attorney, professional practices, and coherent testimony, and we "allot substantial deference to the factfinder in reaching credibility determinations with respect to witness testimony." *Devine*, 520 F.3d at 1287 (internal quotation marks and alteration omitted).

The record also supports the finding that Hecker adequately consulted with Pendergrass about appealing. The Supreme Court explained in *Roe v. Flores-Ortega* that counsel has a constitutionally imposed duty to consult" with his client about an appeal "when there is reason to think either . . . that a rational defendant would want to appeal" or the client "reasonably demonstrated" an interest

in an appeal. 528 U.S. at 480. This duty to consult requires counsel to advise the client "about the advantages and disadvantages of taking an appeal," and make a "reasonable effort to discover" whether the client wants to appeal, to ensure that any waiver of the right to an appeal is knowing and voluntary. *Id.* at 478. If counsel has consulted with the client, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the [client's] express instructions with respect to an appeal." *Id.*

Hecker responded to Pendergrass's question about whether an appeal was possible with specific, practical information about how he believed an appeal would affect Pendergrass. Hecker advised Pendergrass of several significant disadvantages of appealing, including that an appeal might compromise Pendergrass's chance of the government filing a motion to reduce his sentence based on his cooperation and that a successful cross-appeal by the government might leave Pendergrass with a longer sentence. And Hecker could not describe any advantages of an appeal because he knew of none. Hecker succeeded in his objections at sentencing, reducing Pendergrass's advisory guideline range from life imprisonment down to a range of 292 to 365 months and leaving no nonfrivolous issues to appeal. We are satisfied that Pendergrass received the information necessary to knowingly and voluntarily assert or waive his right to appeal.

Pendergrass argues that Hecker failed to make a reasonable effort to discover what he wanted to do because Hecker did not

21-14510                Opinion of the Court                9

recall directly asking Pendergrass if he wanted to appeal regardless of the risks. But the Supreme Court explained in *Flores-Ortega* that "imposing 'specific guidelines' on counsel is 'not appropriate.'" *Id.* at 479 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Pendergrass's lack of renewed interest in an appeal after receiving the necessary information to guide his decision reasonably evidenced to Hecker that Pendergrass no longer wanted to file an appeal.

We **AFFIRM** the denial of Pendergrass's motion to vacate his conviction.