WILSON, Circuit Judge,
dissenting:
I respectfully dissent from the court’s opinion in this case, because I believe that the representation Appellant received at the penalty phase of his case fell short of constitutionally acceptable standards. The record indicates that Appellant’s attorneys did very little to ensure that their client *1250 would submit a credible mitigation case at the sentencing phase. Absent this deficient performance, it is likely that Appellant would have received a life sentence rather than the death penalty.

Deficient Performance

The majority correctly points out that when evaluating claims of deficient performance, we inust look at the strategic course that the Appellant’s lawyers elected to take, and determine if those actions were reasonable. See Chandler, 218 F.3d at 1315 n. 16. It is irrelevant whether the decision to select the strategy they pursued was wise vis a vis some other, alternative strategy that was not selected (or not even considered); the relevant question is whether the strategy that was actually chosen, and the efforts to implement that strategy, might have been reasonable. See id.
What strategy did Appellant’s counsel pursue at the sentencing phase of this case? To the extent that they settled on any clear strategy for the penalty phase, counsel appear to have decided to focus on presenting testimony reflecting Appellant’s generally positive character and reputation prior to the crime. Alderman’s examination of Appellant’s niece and sister at the sentencing phase, as well as the questions directed to G.B.I. agent Grissom, reflected this general aim. Appellant’s Lowndes County attorneys employed this same strategy, and Appellant’s Cook County counsel were aware of the success of that strategy in that trial. Given the facts of the instant case, it was an eminently reasonable decision for Cook County counsel to elect to use the same general strategy in Appellant’s second trial.
However, simply settling on a potentially reasonable strategy does not discharge an attorney’s constitutional responsibilities to her client. The attorney’s conduct in pursuing that strategy at trial must still conform to Strickland’s reasonableness standard, ie. the actions (or omissions) of counsel must still fall within the wide range of professional competence. See Chandler, 218 F.3d at 1313-14. My review of the record indicates that Appellant’s Cook County lawyers did not take even the most basic steps to ensure that their chosen strategy would be successful. The unreasonable conduct in this case lies not in the selection of a strategic direction, but rather in the effort (or lack thereof) to implement that strategy. A close look at the record will illustrate this point.[1]
First, a fair reading of the record demonstrates that there was remarkably little substantive preparation for the sentencing phase until very late in Appellant’s trial. Davis’s testimony, explaining his reasons for withdrawing from Appellant’s Cook County legal team, is the first indication in the record that Appellant’s attorneys were engaging in little planning for the sentencing phase prior to the trial.[2] The record is *1251 largely bereft of any specific references to actual preparation, as opposed to mere vague discussion, in the pretrial stages. Griner testified that, both pre-trial and during the trial, she “considered” putting on various witnesses at the sentencing phase, but her testimony was vague as to the substance of any discussions she had with her co-counsel about these witnesses. From her testimony, we can glean that counsel had at least developed some approximation of a sentencing phase strategy in the pretrial stage, though specific tactical decisions were not made at that time. Studstill’s testimony indicated that he participated in general pretrial discussions about which witnesses to call at the sentencing phase, but he admitted that he did not himself interview or contact any prospective witnesses. His testimony further demonstrates that counsel’s pretrial preparation was largely dedicated to considering and discussing various lines of defense at the sentencing phase, and not to making solid commitments about which witnesses to call or which specific arguments to advance. Alderman denied that there was any substantial preparation in the pretrial stage for the sentencing hearing.
Remarkably, the testimony of all three attorneys lends support to Appellant’s claim that most of the substantive discussion of the sentencing phase took place during the forty-five minutes between the conclusion of the guilt phase and the jury’s entry of a verdict. It was during this brief period that almost all of the relevant tactical decisions, such as which witnesses to call, appear to have been made. The failure to have this tactical discussion earlier helped ensure that there would be little time to enact it when the sentencing hearing came to pass, though Appellant’s counsel likely thought they would have more time than they did. In fact, the verdict came forty five minutes after the jury retired, and the sentencing phase began almost immediately (within five minutes), catching Appellant’s attorneys off-guard. Faced with this problem, Appellant’s counsel inexplicably failed to seek a continuance after the verdict so that they could locate and prepare necessary sentencing phase witnesses.
This procrastination with respect to tactical planning led inexorably to counsel’s inability to undertake the actions necessary to mount a credible sentencing-phase defense. For one thing, they failed to subpoena any witnesses to testify for the defense at the sentencing phase. Aider-man and Studstill admitted that they did not even attempt to contact any of the witnesses from the Lowndes County sentencing phase, or any other potential character witnesses, that did not happen to be present in the gallery at the Cook County trial.[3] Griner claimed to have tried to contact a co-worker (presumably the coworker that testified in Lowndes County), and one of Appellant’s neighbors, but found these witnesses unavailable.[4] Gri- *1252 ner did not subpoena either of these witnesses, or apparently make any more than a cursory effort to secure their presence. Not one of Appellant’s three attorneys appear to have made any serious attempt to ensure that any of the valuable witnesses from Lowndes County, such as Appellant’s co-worker and the prison guard with whom Appellant developed a friendship, were present in Cook County to provide similar testimony. In fact, the witnesses that ended up testifying for the defense at the sentencing phase were people, such as Appellant’s sister and niece, that just happened to be present in the courtroom at the conclusion of the guilt phase of the trial. Griner admitted as much when she noted that each of the available witnesses she allegedly debated calling at the sentencing phase were all persons that were fortuitously present for the trial. If no one that could have attested to Appellant’s character had happened to be present in the courtroom that day, Appellant might not have been able to present any character witnesses at the sentencing phase.
Secondly, the record clearly indicates that the attorneys did not attempt to prepare any of the witnesses that they eventually considered calling at the sentencing phase. All three attorneys admit that they made no pre-trial effort to interview and discuss the testimony that the potential witnesses were to give during the sentencing hearing. While Griner claimed that counsel talked to prospective sentencing phase witnesses during trial recesses, she admitted that there was no time to actually prepare witnesses for their testimony during the trial. Had the witnesses that ended up testifying been briefed on prospective questions, it is likely that the testimony would have formed a more coherent picture of Appellant’s character pri- or to the crime. Furthermore, it is likely that with reasonable pre-trial preparation, Appellant’s wife and daughter (also present in the courtroom) would have been prepared for the possibility that their testimony would be necessary at a sentencing hearing. This would have made it less likely that they would have been “too upset” to testify after Appellant was found guilty. Indeed, Appellant’s wife submitted an affidavit, expressing dismay at not being prepared or called as a witness at the Cook County trial.
Once again, this failure to secure and prepare witnesses for the sentencing phase is really hot surprising, because there appears to have been almost no specific discussion of tactics prior to the forty-five minutes that separated the conclusion of the guilt phase from the sentencing phase. Of course there was no time to secure or prepare witnesses when the meaningful planning for the sentencing phase did not begin until less than an hour before the sentencing hearing began. Counsel’s failure to consult one another and develop a coherent sentencing-phase strategy earlier, coupled with their inexcusable failure to seek a continuance after the verdict was read, led to significant and costly deficiencies in their sentencing phase presentation. The G.B.I. agent’s testimony shed little light on Appellant’s character, as the agent did not know Appellant and could only testify that Appellant’s background file indicated that he had been consistently employed. Appellant’s sister and niece offered useful (if unprepared) testimony concerning Appellant’s positive background and genial relationships with his extended family. However, this testimony was hardly a comprehensive portrait of Appellant’s life and character. Neither of these substantive character witnesses had lived with Appellant as an adult; neither knew anything about his non-familial relationships, and much of their testimony relied upon secondhand reports about his immediate family life. The prosecutor capitalized on the distance in the relationship between *1253 the Appellant and his two significant character witnesses in his closing statement, where he noted that “[Appellant is] the kind of man who doesn’t have a preacher to come and speak for him; a personal Mend; a dose, dose family member.” (emphasis added).[5]
Additional character witnesses were existent and available, and could have easily supplied testimony that would have developed a more comprehensive portrait of Appellant’s nature.[6] This failure to put forward a credible mitigation case was not the result of any strategic choice; rather, it was the result of poor planning and a lack of reasonable effort.
Of course, when assessing counsel’s performance, we do not ask whether counsel’s decisions were strategic, but rather whether they were reasonable. See Roe, 528 U.S. at 481, 120 S.Ct. 1029. Cook County counsel chose to present what they did; our inquiry must focus on whether that presentation might have been reasonable, given all of the circumstances. See Chandler, 218 F.3d at 1315 n. 16.
Looking at what Appellant’s attorneys actually did, I don’t dispute that the general choice of the sentencing phase strategy (presenting evidence reflecting the pre-crime positive character and history of Appellant) was a reasonable one, especially in light of the success that strategy enjoyed at the Lowndes County proceeding. However, Appellant’s lawyers did next to nothing to effect that strategy. They did not subpoena any witnesses, they did not prepare any of the witnesses that happened to be present, and they did not undertake any reasonable pre-trial effort to develop a coherent or comprehensive senteneing-phase presentation. They were amazingly lucky when they looked around the courtroom after the verdict was read and happened to locate two spectators that could provide some useful character testimony on Appellant’s behalf. Of course, this testimony was unprepared and easily refutable. Due to their familiarity with the Lowndes County case, Appellant’s lawyers knew that this defendant had a solid group of available character witnesses that could provide the sort of comprehensive character evidence they needed. Yet they did nothing to secure this testimony. No competent counsel would have done so little to ensure their client’s survival. This conduct fell well short of any set of professional norms, and should not be considered objectively reasonable under the first prong of Strickland.
The majority opinion, in finding this sort of conduct constitutionally acceptable, contradicts several authorities I find relevant to this case. In Collier v. Turpin, we encountered analogous conduct on the part of defense counsel at the sentencing phase of a death penalty case. In that case, defense counsel called ten witnesses to the stand, presumably to testify about the positive aspects of Collier’s character, and the marked contrast between his overall character and his actions at the time of the crime. The questions defense counsel asked elicited testimony suggesting that Collier “[H]ad a ‘good’ reputation, that he *1254 was generally known as a hard worker who took care of his family, and that he had a good reputation for truth and veracity.” Collier, 177 F.3d at 1201. However, counsel asked no questions about Collier’s upbringing, his disposition, or specific instances in which his generally positive character manifested itself. Indeed, counsel’s presentation tended to give the impression that the witnesses did not know Collier. Id. The court concluded that counsel “presented almost none of the readily available evidence of Collier’s background and character that would have led the jury to eschew the death penalty.” Id.
The instant case is distinctly analogous to Collier. My interpretation of our holding in Collier is the following: when defense attorneys have decided to pursue a mitigation case based on the positive character of the defendant, and testimony that would produce a beneficial picture of defendant’s disposition is readily available, it is unreasonable not to make some effort to present a substantial portion of that testimony. In this case, Appellant’s attorneys clearly decided to present a mitigation strategy based upon Appellant’s character. Testimony that would have presented a comprehensive portrait of Appellant’s life and character was readily available; in fact, counsel had a successful model, i.e. the Lowndes County transcript, to use in preparing their mitigation case. They did not present most of the available testimony because they elected not to try to locate or prepare any of the witnesses that would have made a mitigation case credible. This, in my mind, is objectively unreasonable conduct that constitutes deficient performance under the first prong of the Strickland test.
Even more closely analogous to the facts of this case is the substance of the Supreme Court’s holding in Williams v. Taylor. After Williams was convicted of murder, defense counsel put the defendant’s mother and two neighbors on the witness stand. All three testified that the defendant was a “nice boy” and not a violent individual. Counsel also played the recorded voice of a psychiatrist that had examined Williams, who did little more than recount Williams’s statement that he had once taken pains to avoid injuring bystanders in a robbery. Not surprisingly, Williams received a death sentence.
In Williams’s case, there was ample, readily available evidence of situations in which Williams prior to his crime, had displayed admirable character, and there was also a large body of unexplored evidence of the difficulties of Williams’s childhood. This evidence could have been discovered and used without much effort; in fact, Williams’s counsel failed to return the telephone call from a prison ministry official who offered to testify that Williams thrived in a regimented environment and was proud of a carpentry degree earned in prison. However, Williams’s counsel never uncovered much of this evidence, in part because they did not begin to prepare for the sentencing phase “until a week before the trial.” Williams, 529 U.S. at 395, 120 S.Ct. 1495. The Supreme Court found that Williams’s attorney’s failure to secure this additional, readily available mitigation evidence “fell short of professional standards,” and was unreasonable under the first prong of Strickland.
In the instant case, the conduct of Appellant’s attorneys was even more deficient than the conduct found unacceptable in Williams. In Williams, additional, useful mitigation evidence, consistent with the strategy employed by Williams’s counsel, went undiscovered due to counsel’s unreasonable failure to investigate their client’s background. In this case, Appellant’s lawyers didn’t even have to investigate Appellant’s background and character; the Lowndes County transcript amounts to a *1255 ready-made mitigation case, completely consistent with the general strategy Cook County counsel wanted to pursue. Yet, because they didn’t begin to seriously discuss tactics until forty-five minutes before the sentencing hearing began, they were unable to present anything more than a hollow shell of the Lowndes County mitigation case at the Cook County trial. The conduct of Williams’s attorneys looks diligent by comparison. The actions Appellant’s attorneys took cannot and should not be rationalized as objectively reasonable under current authority, and the state ha-beas court unreasonably applied federal law when it made that finding.

Prejudice

The majority correctly points out that the aggravating factors present in the Cook County case exceeded those that were presented at the Lowndes County trial. This reality makes it somewhat more difficult for Appellant to demonstrate that he was prejudiced by his attorneys’ unreasonable conduct. Nonetheless, but for counsel’s unreasonable failure to present a credible mitigation case, there is a reasonable probability that Appellant’s sentence would have been different.
The majority claims that the distinction between the mitigation cases put forward by Appellant’s counsel at the two trials is merely a matter of quantity, differing “only in its volume, not in its substance.” This argument suggests that the mitigation case presented in Cook County was substantially similar to the case presented in Lowndes County, and that neither presentation would have changed the outcome. I disagree. The substance of the testimony presented at the Lowndes County trial was considerably stronger than that presented in Cook County, and the weakness of the Cook County testimony likely affected the outcome of that sentencing hearing.
As a general matter, the introduction of character evidence is most useful when it presents an image of the defendant as a whole person, shedding light on positive aspects of the defendant’s life in varied contexts. A central purpose of presenting positive character evidence is to emphasize the sharp distinction between the defendant’s overall character and reputation and the defendant’s criminal conduct. To do this successfully, defense counsel must present a comprehensive picture of the defendant’s life and character, so that a jury can consider many of the defendant’s relevant relationships and actions, such as his relationships with his family (both immediate and extended), friends, co-workers, and other close acquaintances. When evidence of a defendant’s positive character comes from only one source, the jury is naturally likely to accord it less weight, as it represents merely a fraction of the defendant’s overall identity. Character evidence is not easily dismissed when it comes from a variety of sources, shedding light on a variety of the defendant’s relationships, and when it presents a comprehensive picture of a defendant’s life and character.
Often, testimony presenting a comprehensive view of a defendant’s character is unavailable. Many criminal defendants lack the breadth and variety of the close relationships that Appellant had prior to his crimes, and thus any character evidence presented at the penalty phase is necessarily incomplete. However, when testimony reflecting defendant’s character from a variety of angles is available, as it clearly was in the instant case, it is far more powerful than character testimony from one or two sources.
In this case, Appellant’s counsel presented a constricted and grossly incomplete view of Appellant’s character and relationships. Appellant’s niece and sister, useful *1256 as their testimony may have been, could only shed light on one of Appellant’s relationships, and his character with respect to those relationships. If counsel had presented the Lowndes County mitigation case, the jury would have had a much more comprehensive, nuanced, and textured view of Appellant.
The prosecutor understood this, and pounced on the distinction' between the mitigation cases presented at the two trials. In his closing statement, the prosecutor thundered that the most important piece of information to come to light during the penalty phase was the fact that the jury didn’t hear from Appellant’s wife, a close friend, or a close family member. The prosecutor concluded his opportunistic remarks with the statement:
[Appellant is] the sort of man that doesn’t have a preacher to come and speak for him, a personal friend, a close, close family member. So, I say to you that tells you more than anything else you’ve heard in three days about the man. (emphasis added).
The prosecutor’s closing remarks thus placed remarkably strong emphasis on the significance of the weaknesses in Appellant’s presentation; the very weaknesses that would have been rebutted had Appellant’s attorneys performed reasonably. The Lowndes County presentation would have prevented the prosecutor from credibly making the (incorrect) argument that Appellant was the sort of man that lacked close, loving, positive relationships with others. The fact that the prosecutor so dramatically emphasized the importance of the weaknesses in the Appellant’s presentation (“[T]hat tells you more than anything you’ve heard in three days about the man.”) illustrates just how prejudicial the omission of relevant evidence was.
The character testimony that was presented in Cook County failed to provide the jury with anything other than an incomplete picture of the Appellant’s overall character. This lack of relevant character testimony made the jury’s task much easier, as they could readily accept the prosecutor’s claim that Appellant had no close relationships, and his fate should be adjudicated solely by reference to his crime. Had Appellant presented the readily available character evidence that would have provided a comprehensive picture of Appellant’s life, the jury’s task would have been more difficult. With sufficient evidence of Appellant’s positive character, the jury would have been faced with the same challenge the Lowndes County jury confronted, namely weighing a lifetime of positive relationships and achievement against the horrific nature of the crime. No one can say with certainty how the jury would have decided had this additional testimony been presented. However, I can say with certainty that I cannot have confidence in the jury’s decision when it was made on the basis of so incomplete a presentation of one side of the ledger. The jury’s verdict was rendered without its consideration of highly relevant information, and there is a reasonable probability that the jury’s decision would have been different had it been privy to this information. For this reason, the Appellant has successfully demonstrated that he was prejudiced by his attorneys’ unreasonable performance.

Conclusion

In conclusion, several salient and troubling facts about this case should be reemphasized. Appellant’s Cook County attorneys had the transcript of the Lowndes County sentencing hearing at their disposal to use in preparing Appellant’s sentencing phase strategy. This transcript is nothing less than an instruction manual for how to put together a successful portrait of Appellant as a person whose actions on the night of the crime stand in sharp contrast to the person that he was prior to and *1257 after the crime. Indeed, Appellant’s attorneys reasonably decided to pursue the same general strategy at the Cook County case. Yet they neither subpoenaed, prepared, nor took any steps to ensure that any of the witnesses that testified at the Lowndes County trial would be available and ready to testify in Cook County. In fact, if Appellant’s niece and sister hadn’t happened to be in the gallery that day, Cook County counsel might not have been able to put on any relevant character witnesses at the sentencing phase. If this performance is rationalized as something a reasonable attorney might have done, we have rendered the word “reasonable” meaningless.
Given the unreasonable omission of relevant and available character evidence during the penalty phase of this case, the integrity of the death verdict is suspect. Appellant is likely on death row today because of the deficient performance by his attorneys at the sentencing phase of this case. I respectfully dissent.'

. As the Appellant did not challenge the state habeas court’s findings of fact, this court correctly afforded those findings of fact a presumption of correctness. However, the state habeas court's relevant findings of fact are rather unhelpful. While the court found that "preparation for the sentencing phase took place before trial, during trial, and during the recess between the guill/innocence and sentencing phase of the trial," the court does not describe the nature or extent of that "preparation,” and indeed, offers no specific examples of these alleged efforts. The state court’s findings of fact tell us remarkably little about what actually occurred prior to and during the penalty phase of the trial. Given this absence of detailed, relevant factual findings, we carefully examine the record on appeal to see what, if anything, we learn about the actions of Appellant’s counsel prior to and during the sentencing phase of his case.

. Davis testified that Alderman and Griner believed Appellant was innocent, and thus did little to prepare for the sentencing hearing in the event that Appellant was found guilty.

. Alderman, less than a year out of law school at the time, had never tried a criminal case of any kind before the Cook County trial. Yet it was she who conducted the vast majority of Appellant's trial, examining every witness at both phases (excepting Appellant at the sentencing phase), making opening arguments at both the guilt and sentencing phases, and closing the sentencing phase. Alderman played far and away the most conspicuous role in Appellant’s courtroom defense, a task likely to be overwhelming for any new attorney. The daunting task that she, an inexperienced lawyer, faced in preparing for the conduct of the trial day to day, coupled with Studstill's absence for most of the trial, doubtless contributed to the lack of foresight in preparing or locating potential witnesses for the sentencing phase.

. This appears to be the only evidence in the record suggesting that Griner or others made an effort to ensure that any character witness would be present to testify at the Cook County proceeding.

. The prosecutor had access to the Lowndes County transcript as well, so he had to know that Appellant did in fact have friends and close family members willing to speak on his behalf. His comments about Appellant being friendless were questionable in light of this fact; however, Appellants' attorneys are squarely to blame for giving the prosecutor the opportunity to credibly make such a seemingly incorrect argument.

. The existence of additional character witnesses was apparent to Cook County counsel from the Lowndes County trial transcript. In addition, the profusion of affidavits in the record suggests that additional character witnesses available could have been uncovered with any reasonable investigation.