Wassouf v. United States                    CV-02-343-M    10/31/03

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


George Wassouf,
     Petitioner

     v.                                          Civil No. 02-343-M
                                                 Opinion No. 2003 DNH 189
United States of America,
     Respondent


**O R D E R**


By order dated June 20, 2003 (document no. 15), the court held that petitioner seemed to present one claim for relief in his petition for relief under 28 U.S.C. § 2255 that might prove meritorious: that he timely directed his trial defense counsel to file an appeal in his underlying criminal case, but counsel failed to do so. See, Roe v. Flores-Ortega, 528 U.S. 470 (2000). By order dated August 4, 2003, the court appointed counsel (Michael Shklar, Esq.) to represent petitioner in connection with that issue. A hearing was held on September 24, 2003. Petitioner was present.

## Background

At the hearing, petitioner and the government addressed the remaining issue, presenting witnesses and exhibits, including relevant correspondence between petitioner and counsel. Petitioner asserts, and testified, that he told his defense counsel to file an appeal of his criminal conviction and sentence, but counsel failed to do so. Trial defense counsel, Assistant Federal Defender Jonathan R. Saxe, filed an affidavit contradicting petitioner's claim. He also gave testimony that contradicted petitioner's assertions. Specifically, Saxe testified that petitioner never told him that he wished to appeal. To the contrary, Saxe said that petitioner plainly and unambiguously expressed his decision <u>not</u> to appeal, both before and after sentencing, and during two telephone conversations before the time expired during which an appeal of right could have been taken.

The remaining issue to be resolved in this habeas petition is straightforward. Petitioner's complaint amounts to an assertion that he was denied effective assistance of counsel - that Attorney Saxe acted in a professionally unreasonable manner

2

in failing to file a notice of appeal in his underlying criminal case after having been instructed to do so.  See Rodriquez v. United States, 395 U.S. 327 (1969).  The Supreme Court recently addressed the subject of ineffective assistance of counsel as it relates to the failure to file a notice of appeal in a criminal case, holding:

> If counsel has consulted with the defendant [about pursuing an appeal], the question of deficient performance is easily answered:  Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.

Flores-Ortega, 528 U.S. at 478.  The Supreme Court further explained that by "consult" it meant that defense counsel advised defendant about the advantages and disadvantages of taking an appeal, "and [made a] reasonable effort to discover the defendant's wishes."  Id.

I have no doubt that Attorney Saxe consulted with petitioner about the possibility of an appeal.  And, I have no doubt that petitioner communicated, on different occasions within the ten day appeal period, that he wished to forego an appeal.  And, I am

3

satisfied that petitioner understood that the likelihood of success on appeal was minimal.

After all, in the underlying criminal case, petitioner entered a knowing, intelligent, and voluntary plea of guilty, pursuant to a negotiated plea agreement of the so-called "binding" type. The plea agreement called for a specific sentence; if a more severe sentence was imposed, petitioner was entitled to withdraw his plea. Petitioner was in fact sentenced within the limits of his bargain with the prosecution, so his plea remained unassailable. Needless to say, a criminal conviction based upon a provident plea of guilty, made pursuant to a plea agreement for a specific sentencing range, which results in the sentence bargained for, all tends to reduce the scope of potentially appealable issues and indicates that "the defendant seeks an end to the judicial proceedings." Id. at 480.

Ordinarily, then, relief would be summarily denied. But a number of factors in this case militate in favor of a closer look. First, petitioner had ten (10) days in which to file an appeal of his conviction and sentence. Fed. R. App. P.

4

4(b)(1)(a). Needless to say, accurate time computation under the federal rules often requires both time and a fair amount of patience. Nevertheless, for reasons that will become clear, it is necessary, before proceeding further, to accurately determine just when the ten day appeal window closed in this case.

Having carefully reviewed the record and the applicable procedural rules, it is evident that the appeal period expired on Monday, December 10, 2001, but not for the reasons assumed by counsel and the court during the hearing. That conclusion is based on the following analysis. Petitioner was sentenced on Monday, November 26, 2001. Judgment was entered on Tuesday, November 27, 2001, but an amended judgment was subsequently entered on Thursday, November 29, 2001. To determine when the 10-day appeal window closed, applying the current iteration of Fed. R. App. P. 26 (a) (2), one must count ten days from November 29, excluding the starting day (November 29th) and excluding intermediate Saturdays, Sundays, and legal holidays, because the period of time being computed is "less than 11 days." Fed. R. App. P. 26(a)(2). Under the current rule, then, the ten day appeal period would have expired on Thursday, December 13, 2001.

5

However, Rule 26(a)(2) was amended in 2002 to resolve an inconsistency between the Federal Rules of Criminal Procedure and Federal Rules of Appellate Procedure, which computed time differently.

In 2001, at the time of petitioner's conviction and before the amendments became effective, Fed. R. App. P. 26(a)(2) excluded intermediate Saturdays, Sundays, and legal holidays from the time computation only when the period being computed was "less than 7 days." Under that version of the rule, then, the ten day appeal period, counted from entry of the amended judgment, would have expired on December 9, 2001. But, December 9, 2001, was a Sunday, and Fed. R. App. P. 26(a)(3) instructs that if the last day is a Sunday, it is also excluded. So, under the then-applicable rules, the period in which petitioner could have filed an appeal as of right expired the next day - on Monday, December 10, 2001.

Attorney Saxe consulted with petitioner about an appeal both before and at sentencing on November 26, 2001, advising petitioner of his right to file an appeal, and generally advising

him of counsel's opinion that there were no meritorious appellate issues.  That is, Saxe told petitioner that, in his opinion, there was nothing to appeal.  Counsel also made a reasonable effort at that time to discover petitioner's wishes regarding an appeal and, quite understandably, petitioner expressed his lack of interest in taking an appeal, as well as his agreement that an appeal should not be pursued, no doubt recognizing that he had received the benefit of his plea bargain and there were no meritorious issues.

Consistent with that circumstance, during the ten days following sentencing, counsel received a letter from petitioner that did not mention any interest in an appeal, and he had one or two telephone conversations with petitioner during which petitioner did not bring up the matter of an appeal.  On Thursday, December 6, 2001, petitioner again called counsel, but this time he did mention a possible appeal, asking, in substance, "What about this appeal thing?"  Again, counsel discussed the matter of an appeal with petitioner, and again, after discussing the issue, petitioner conveyed his lack of interest in filing an appeal; he did not instruct counsel to file an appeal.

7

On Monday, December 10, 2001 - the last day on which an appeal could be filed as a matter of right - Saxe arrived at his office and found a letter from petitioner dated December 2, 2001, but postmarked December 7, 2001 (i.e., it was mailed after the December 6 telephone conversation). In that letter petitioner wrote: "You also should appeal the sentence so file for it." Rather than simply file a notice of appeal (which he readily conceded could be done in a matter of minutes, with little effort), Saxe called petitioner at the Merrimack County House of Correction to inquire about his contradictory written statement regarding filing an appeal.

Saxe advised petitioner that if he indeed wanted Saxe "to try to file an appeal at that point," he would do so. See Affidavit of Jonathan Saxe, Esq., at para. 9 (document no. 20) (emphasis supplied). Saxe conceded that, at that time, he thought the appeal period had already expired on December 6, or thereabouts, probably calculating ten calendar days from the sentencing date (November 26) rather than from the date of the amended judgment (November 29). During that conversation Saxe did not explicitly tell petitioner that the appeal period had

8

expired, but it seems more likely than not that Saxe's misunderstanding colored his discussion with and the advice given to petitioner. It bears noting that Saxe also did not expressly tell petitioner that the appeal period was still open, and that if he wanted to appeal, an appeal was easily had. After discussing the matter again, Saxe says he was left with the clear impression that petitioner had plainly and unambiguously expressed his understanding that there were no meritorious issues and had unambiguously communicated his decision not to pursue an appeal.

Later that afternoon, Saxe received yet another letter from petitioner, this one dated and postmarked December 8 (i.e., it was written and mailed before that morning's telephone conversation but after the December 6 conversation). In that letter petitioner wrote "I told you to file an appeal twice <u>before</u> <u>the</u> <u>(10)</u> <u>days</u> <u>were</u> <u>up</u>. But you said there was no base [sic] for it. But I told you to do it anyway" (emphasis added). Saxe did not make further inquiry of petitioner after receiving that letter, since the letter had obviously been written and mailed before the telephone conversation they had just had that

9

morning, in which Saxe understood petitioner to have again decided not to pursue an appeal. The December 8 letter suggests, of course, that petitioner also thought the ten day appeal period had already expired when he wrote the letter, a misunderstanding likely rooted in Saxe's own misunderstanding, and in the December 6 discussion.

About eleven days later, Saxe received yet another letter from petitioner, this one dated December 18th and postmarked December 20th. In that letter petitioner reiterated his earlier statement: "I also told you to file for an appeal twice before the (10) days were up. But you said there was no base [sic] for it. But I told you to do it anyway." Saxe, obviously upset, responded by letter dated December 21, 2001, in which he reviewed the history of the interaction between them (from Saxe's perspective) relative to an appeal, and asserted that:

> Every discussion that we had concerning the issue of an appeal, whether it was on the phone or in person, ended with a clear and unambiguous position on your part that you did not want me to file an appeal. You were simply not interested in appealing your case. Your most recent letters are shamefully dishonest and manipulative. . . . You elected not to file an appeal and conveyed that decision to me. The appeal period is passed. My representation of you has concluded.

10

**Discussion**

The record in this case lends credence to Saxe's assessment of petitioner's penchant for dishonesty and manipulation. Petitioner's credibility is weak, to say the least. Whether his obvious difficulties in that regard are malevolent or pathological is hard to say. But, there can be no doubt that petitioner's prolific and self-contradictory pleadings and letters reveal him to be among the most difficult defendants to represent. Without doubt, he continually confronted Saxe with mixed signals and blatantly contradictory statements regarding the handling of his case.

Nevertheless, it does appear that petitioner directed counsel, in writing, to appeal ("You also should appeal the sentence so file for it.") at a time when an appeal of right was still available to him (i.e., the letter received by Saxe on December 10, 2001). Saxe could have and should have filed a notice of appeal on December 10. I do not fault Saxe for calling petitioner to discuss his apparent change of heart, and do not doubt the sincerity of Saxe's impression that petitioner, during that conversation, yet again seemed to change his mind. But, it

11

is not altogether clear that petitioner did change his mind (he says he did not).  And, it seems that he did not change his mind after full and adequate consultation – that is, after being accurately advised of the situation regarding the appeal period, which was still open although Saxe thought it had expired.  If petitioner did acquiesce in abandoning his right to file an appeal, it is more probable than not that he abandoned that right, on December 10, based in substantial part on his misunderstanding (a misunderstanding shared by Saxe) that the appeal period had already expired anyway, when it had not.  If Saxe had said to petitioner, on December 10, "The appeal period is still open, if you wish I will immediately note an appeal" (rather than that he would "try" to file an appeal "at that point" – i.e., the period having expired), then petitioner likely would have directed him to "file for it," thereby obtaining appellate review.

The difficulty here arises from the fact that the appeal period was not correctly calculated by counsel in the first instance.  Nor was it adequately explained to petitioner, during either the December 6 or December 10 consultations, that an

appeal of right could be had merely by asking. Had counsel been aware that the time in which to appeal was still open on December 10, when he got petitioner's letter directing him to appeal, counsel would have likely followed his usual practice of, as he said, filing a notice of appeal whenever a client wishes to appeal, without regard to the absence of meritorious issues. And, had counsel correctly calculated the expiration of the appeal period, his discussion with petitioner on December 10 would likely have (and should have) included specific advice to the effect that the appeal period was still open.

I am persuaded that had accurate advice been given regarding the open appeal period, this petitioner would have elected to pursue an appeal, given his often repeated view that issues of one sort or another exist warranting review. That is not to say that his taking an appeal would have constituted a rational or reasonable decision, but only that this petitioner would have chosen to appeal (the court is not unaware that petitioner faces deportation, and may think an appeal will delay that outcome). That petitioner has a well-documented habit of vacillation and self-contradiction makes it less, not more, likely that his

13

statements regarding abandoning his right to appeal were ever firm. He was, of course, entitled to change his mind as often as he liked, up until the appeal period expired. He directed an appeal by letter received by counsel on December 10, and although he may have changed his mind yet again after discussing the matter with counsel, that change of mind was likely the product, in substantial part, of a basic misunderstanding (shared by counsel) as to whether an appeal of right was still available, and was not based upon correct advice that should have been given regarding the open appeal period. Petitioner's subsequent complaint also supports the conclusion that he thought the appeal period had already expired before December 10.

Accordingly, I find that petitioner is entitled to limited relief, in the nature of affording him ten (10) days from the date of this order to file a notice of appeal in his underlying criminal case, if he chooses to do so. Attorney Shklar shall consult with petitioner about his right to appeal and, if so directed, shall file a notice of appeal. A copy of this order shall be faxed to Attorney Shklar.

14

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 31, 2003

cc:  Michael C. Shklar, Esq.  **(Faxed to 863-3970)**
     Peter E. Papps, Esq.
     Jonathan R. Saxe, Esq.