[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 14, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13161
Non-Argument Calendar

_____

D. C. Docket Nos.
04-22123-CV-DLG
03-20260-CR-DLG

RAFAEL DEJESUS MEDINA,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 14, 2006)**

Before ANDERSON, BIRCH  and FAY, Circuit Judges.

PER CURIAM:

Rafael DeJesus Medina, a federal prisoner, appeals through counsel the district court's denial of his motion to vacate, set aside, or correct sentence, filed pursuant to 28 U.S.C. § 2255.[1] Medina filed his § 2255 motion on August 23, 2004; thus, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), governs this appeal. Medina argues on appeal that he was denied his right to effective assistance of counsel under the Sixth Amendment when his trial counsel failed to file a notice of appeal ("NOA"). For the reasons set forth more fully below, we affirm.

On August 23, 2004, Medina, who is serving a 70-month sentence imposed pursuant to his guilty plea for conspiracy to import 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 960(b)(2) and 963, filed the instant § 2255 motion. Medina argued in this § 2255 motion that his trial counsel, Scott Saul, provided ineffective assistance of counsel by failing to file either a NOA on Medina's behalf, or to consult with Medina during the ten-day period that Medina had for filing an NOA following the court's entry of his judgment of conviction on August 22, 2003.[2] The government responded that Medina had not contended in his

_____

[1] While the same counsel who is representing Medina in this appeal represented him in his § 2255 motion, he is not the same counsel as in the underlying criminal proceedings.

[2] Medina also raised in his § 2255 motion, and the court ultimately rejected, constitutional challenges to his sentence based upon the Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296, 303-04, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004), that the "statutory maximum" is "not the maximum sentence a judge may impose after finding additional

§ 2255 motion that he had asked Saul to file a NOA. Nevertheless, the government conceded that an evidentiary hearing would be necessary for the court to resolve this claim.

The magistrate judge subsequently conducted an evidentiary hearing, during which Medina and Saul were the only witnesses to testify. Medina, who was a 41-year-old citizen of the Dominican Republic and had an eleventh-grade education, testified that he had lived in the United States since 1981. After Medina's arrest on the instant offense, the court appointed him a public defender. Medina's brother, however, subsequently hired Saul to represent Medina, and Medina plead guilty. Prior to sentencing, Medina and Saul met, discussed Medina's presentence investigation report ("PSI"), and filed their objections to it, including objecting to (1) a two-level enhancement of his offense level for the possession of a firearm during the commission of a crime, and (2) the denial of "safety-valve relief."

Medina further testified that, immediately after the court overruled these objections and imposed sentence, and while Medina was still in the courtroom, Saul informed Medina that they would appeal his sentence and that they would

facts, but the maximum he may impose without any additional findings." However, our review is limited to the claim of ineffective assistance of counsel that is contained in the district court's certificate of appealability ("COA"). See Murray v. United States, 145 F.3d 1249, 1251 (11th Cir. 1998) (holding that appellate review is limited to the issues specified in the COA).

"see each other 'tomorrow.'" Medina, in turn, confirmed that he wished to appeal. However, even after Medina and his family repeatedly attempted to contact Saul, Saul never met with Medina or filed an appeal. Medina contended that, within a few months of sentencing, when Medina's brother finally was able to contact Saul by telephone, Saul informed Medina's brother that Saul had not filed an appeal because "it was not worth it." Medina also testified that he did not agree with his sentence and that he still wished to appeal it.

On cross-examination, Medina conceded that his brother hired Saul to provide him with advise regarding his "legal options, with regard to going to trial or pleading guilty," and that, prior to sentencing, Medina met with Saul and was able to contact him by telephone from the federal detention center. Medina also agreed that the district court, after imposing sentence, verified that Medina understood that (1) he had a right to appeal his sentence; (2) his NOA would have to be filed, if at all, within ten days of the imposition of sentence; and (3) the court would appoint him appellate counsel if he could no longer afford counsel.

Additionally, Medina clarified that, although he always had at least some difficulty contacting Saul, he could contact his brother, and that neither he nor his brother attempted to retain alternative appellate counsel or inform the district court about their difficulty contacting Saul. In explaining why he did not inform the

4

court of his inability to contact Saul, Medina stated that he did not know how to raise such a complaint. Moreover, on redirect-examination, he stated that (1) he had been detained in a federal detention center since his original arrest; (2) the calls he had made to his counsel from this center had been paid, instead of collect calls; and (3) he had no prior experiences with filing appeals. Medina's counsel for his § 2255 motion also introduced a copy of Saul's notice of substitution of counsel, which did not specify that the parties had agreed that his representation was limited for trial purposes.

Saul next testified, stating that he was a solo practitioner, had been practicing since 1987, and primarily handled criminal-trial work. In April 2003, Medina's brother hired Saul to represent Medina in the instant case. Prior to Medina's plea of guilty, Saul met with him on a weekly basis, and Medina never complained to him that he had problems contacting him.[3] Saul also stated that, although he did not have his standard retainer form with him at the hearing, (1) this form provided that he never handled appeals or other post-conviction matters, and (2) he would have explained this form to Medina's brother when he was retained.

---

[3] Saul explained that, although English was Medina's second language, Medina could speak conversational English. Medina also agreed that, when the court advised him of his appellate rights during sentencing, he had an interpreter present.

When the government asked Saul whether he spoke with Medina following sentencing, Saul replied that he could not remember. On cross-examination, Saul also conceded that he neither withdrew as counsel of record, nor had Medina sign a waiver of his right to appeal. Saul, however, testified that he remembered receiving phone calls from Medina's family "all the time" and that this family never complained about having trouble reaching him. Saul also stated that he did not remember if Medina ever expressed to him that he wished to appeal, but that he was sure that Medina would have wanted to try to obtain the lowest sentence possible.

Additionally, Saul testified that: (1) he did not inform either Medina or his family that he would file a NOA on Medina's behalf; (2) if he and Medina had discussed an appeal, he would have advised Medina to hire appellate counsel and file a NOA within ten days; and (3) Medina's brother was always aware that Saul did not handle appeals. When questioned specifically whether he normally files NOAs, Saul stated that he files them after trials and that he had been filing them during the six months prior to this instant evidentiary hearing to preserve any Blakely claims, but that he, otherwise, normally only informs clients of his opinion of their chances on appeal, the cost of an appeal, and the names of attorneys who handle appeals. At some point post-sentencing, Saul explained to Medina's

brother that he did not think Medina would be successful on appeal. Saul also explained that, although he has a "high volume practice" and is frequently in court, he has four phone lines and advises clients to call him directly via cellular phone after 8:00 p.m.

Based on this testimony, Medina's counsel argued that the government had not offered evidence rebutting Medina's testimony that he informed Saul immediately after sentencing that he wished to appeal and that Saul subsequently had not spoken with him. He stated that, although Saul had testified that he went over his retainer agreement with Medina's brother, the record did not reflect that Medina, himself, ever saw this agreement. He also contended that, whether or not Medina's appeal had merit, he wished to appeal, and Saul either had an obligation to file a NOA on his behalf or move the court for leave to withdraw his representation. As relief, Medina's counsel requested that the court vacate Medina's sentence and then reimpose it, so that Medina could file a timely NOA.

The government responded that, although Saul had testified that he could not remember if he had a conversation with Medina post-sentencing, this lack of memory likely was attributable to (1) the fact that nothing unusual had occurred, and (2) Saul normally advised clients that he does not handle appeals. The government also argued that the court should consider in weighing Medina's

credibility that he had not sought to file a belated appeal until a significant time passed and after the Supreme Court had decided <u>Blakely</u>.

The magistrate judge recommended that Medina's § 2255 motion be denied. In doing so, the magistrate acknowledged that Medina was arguing in support of his ineffectiveness claim that he (1) advised Saul immediately following sentencing that he wished to appeal, (2) subsequently was unable to contact Saul, and (3) wished leave from the court to file a belated appeal. The magistrate, however, determined that Medina's claim of ineffective assistance of counsel was not meritorious because he was aware of his right to appeal and chose not to do so.

The magistrate further explained that neither party disputed that, at sentencing, (1) the district court advised Medina of his right to appeal, (2) the court explained that a NOA had to be filed, if at all, within ten days of the entry of the judgment of conviction, and (3) Medina acknowledged that he understood this advice. The magistrate discussed that, although Medina knew that he only had ten days to file a NOA and easily could have contacted his brother, he neither asked his brother to hire counsel for an appeal, nor complained to the district court about his inability to contact Saul. Moreover, the magistrate found "highly credible" Saul's testimony that: (1) he never handles appeals or post-conviction procedures; (2) he made this practice clear to Medina; (3) he never promised to file a NOA on

8

Medina's behalf; (4) he explained to Medina's brother that he believed any appeal had little, if any, merit; (5) he always could be reached directly by telephone after 8:00 p.m.; and (6) although he received frequent calls from Medina's family, he did not remember receiving post-sentencing calls from Medina.

Based on this evidence, the magistrate determined that Medina was fully aware of his right to appeal, along with the fact that a NOA had to be filed within ten days from the imposition of sentence. The magistrate also determined that Medina (1) was aware of the fact that his counsel did not handle appeals, (2) had the opportunity to contact his brother, whom he easily could have reached, to retain appellate counsel, if he truly had wished to timely appeal his sentencing issues, and (3) only expressed a desire to appeal after the Supreme Court issued its decision in Blakely. The magistrate, thus, concluded that Medina could have, and should have, obtained appellate counsel if he had wished to timely appeal and that he could not now claim ineffective assistance of counsel.

In written objections to this report, Medina argued that the record reflected that he requested that his counsel appeal his sentence. Medina also contended that we have determined that, when a criminal defendant requests that his trial counsel file a NOA on his behalf, the failure of counsel to comply constitutes ineffective assistance of counsel, whether or not the defendant shows that he would have

succeeded on appeal. Thus, Medina concluded that, even if he only had retained Saul to handle his trial proceedings, Saul had a duty to file a NOA to preserve Medina's right to appeal.

On order of the court, the government filed a response to these objections, explaining that, although Medina testified that he had advised Saul that he wished to appeal his sentence, the magistrate's recommendation denying his ineffectiveness claim was based on the magistrate's finding that this testimony was not credible. The government contended that this credibility finding was supported by (1) the fact that Medina did not raise this ineffectiveness claim and seek the opportunity to file a belated appeal until almost ten months after sentencing and after the Supreme Court issued its decision in Blakely, and (2) the magistrate's finding as "highly credible" Saul's testimony that he never does appellate work and Medina never asked him to file a NOA. The government, thus, concluded that our caselaw requiring defense counsel to file a NOA when requested by the defendant was inapplicable. Moreover, the government contended that, although the Supreme Court identified in Roe v. Flores-Ortega, 528 U.S. 470, 480, 120 S.Ct. 1029, 1036, 145 L.Ed.2d 985 (2000), circumstances wherein counsel's failure to file a NOA will amount to ineffective assistance of counsel, regardless of whether

a request to do so was made, none of these circumstances existed in the instant case.

After considering the magistrate's recommendation and conducting a de novo review, the court summarily adopted this recommendation and denied Medina's § 2255 motion. However, on Medina's motion, the magistrate recommended that the court grant a COA on the sole claim of ineffective assistance of counsel. The court, in turn, adopted this recommendation.

As discussed above, Medina argues on appeal that Saul provided ineffective assistance of counsel by failing to file a NOA on Medina's behalf after Medina communicated to Saul his desire to appeal his sentence. Medina alternatively argues that, even if we were to conclude that he did not make this request, Saul's performance was deficient because a reasonable counsel would have consulted with his client about this right to appeal when it was clear that his client wished to appeal. Medina contends that this deficient performance prejudiced him because the record reflects that, but for this deficient performance, he would have timely appealed. Finally, Medina asserts that the district court, in adopting the magistrate's recommendation, erroneously relied on (1) the fact that Medina did not ask his family to retain another attorney to file the NOA, and (2) its mistaken determination that Medina knew that Saul did not handle appeals.

11

When reviewing the district court's denial of a § 2255 motion, we review questions of law de novo and findings of fact for clear error. Varela v. United States, 400 F.3d 864, 867 n.3 (11th Cir.), cert. denied, 126 S.Ct. 312 (2005). "Whether a criminal defendant has received effective assistance of counsel is a mixed question of fact and law." Mincey v. Head, 206 F.3d 1106, 1142 (11th Cir. 2000). We review for clear error questions of fact underlying the claim and reviews de novo the district court's decision on the ultimate issue of "whether counsel's performance passed constitutional muster." Id.

In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test for deciding whether a defendant has received ineffective assistance of counsel. The defendant must establish that (1) his attorney's performance failed to meet "an objective standard of reasonableness," id. at 688, 104 S.Ct. at 2064; and (2) the defendant's rights were prejudiced as a result of his attorney's substandard performance, id. at 693, 104 S.Ct. at 2067. Moreover, the Supreme Court subsequently determined that this two-part test applies to claims—such as here—that a defendant lost his right to appeal because of his attorney's failure to file an appeal on his behalf. Roe, 528 U.S. at 476-77, 120 S.Ct. at 1034.

12

As a preliminary matter, and as both parties concede, we have long held, and the Supreme Court determined in <u>Roe</u>, that an attorney's failure to file an appeal after a defendant requests that he or she do so normally should result in the court granting him an out-of-time appeal, even absent the defendant showing that he or she would have had any viable grounds for appeal. <u>See</u> <u>id.</u> at 477, 120 S.Ct. at 1035; <u>see</u> <u>also</u> <u>Martin v. United States</u>, 81 F.3d 1083, 1084 (11th Cir. 1996). In <u>Gomez-Diaz v. United States</u>, No. 04-11105 (11th Cir. Dec. 20, 2005), we recently examined a district court's denial of a claim of ineffective assistance of counsel, which was based on Gomez-Diaz's contention that his appointed counsel had failed to file a NOA as requested. <u>See</u> <u>id.</u>, manuscript op. at 3. We determined, among other things, that, despite Gomez-Diaz's waiver of some of his appellate rights, remand was necessary for the district court to conduct an evidentiary hearing and determine whether Gomez-Diaz's initial statement of his desire to appeal was sufficient to trigger his counsel's <u>per se</u> duty to appeal. <u>See</u> <u>id.</u> at 9. We also explained that, if, on remand, the district court found either that Gomez-Diaz's attorney had acted contrary to his client's wishes or failed to determine his client's wishes, the court should presume prejudice and grant Gomez-Diaz an out-of-time appeal. <u>See</u> <u>id.</u> at 10.

Examining the record here, Medina testified during the evidentiary hearing that he expressed to Saul his desire to appeal his sentence. On the other hand, although Saul testified that did not remember if he had any conversations with Medina post-sentencing, Saul confirmed that he never handles appeals or other post-conviction matters and that, prior to the past six months, he only had informed clients who plead guilty of his opinion of their chances on appeal, the cost of an appeal, and the names of attorneys who handle appeals. The district court, in adopting the magistrate's factual findings, and in at least implicitly finding more credible Saul's testimony, determined that Medina only had expressed a desire to appeal after the Supreme Court issued its decision in Blakely. Moreover, we have explained that the determination of the credibility of a testifying attorney during an evidentiary hearing on a claim of ineffective assistance of counsel is "within the province of the district court, which had the opportunity to observe and study the witness." See Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir.), cert. denied, 125 S.Ct. 815 (2004). Thus, unlike the facts in Gomez-Diaz, the court in the instant case, after conducting an evidentiary hearing, did not find credible Medina's testimony that he asked Saul to file a NOA on his behalf. Thus concluding that the per se duty to appeal outlined in Roe, Martin, and Gomez-Diaz was not applicable.

In addition to concluding that the two-part Strickland test applies to a claim that a defendant lost his right to appeal because of ineffective assistance of counsel, the Supreme Court in Roe explained that, where a defendant neither instructs counsel to file an appeal, nor asks that an appeal not be taken, the relevant question in determining whether counsel has performed deficiently by not filing a NOA is "whether counsel in fact consulted with the defendant about an appeal." Roe, 528 U.S. at 478, 120 S.Ct. at 1035. The Supreme Court explained that, if counsel has not consulted with the defendant, the court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. In making this determination, the Roe Court rejected a "bright-line rule that counsel must always consult with the defendant regarding an appeal," and, instead, instructed as follows:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

Id. at 480, 120 S.Ct. at 1036.

In addressing the prejudice-prong of the Strickland test, the Roe Court explained that, "to show prejudice in these circumstances, a defendant must

15

demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Id. at 484, 120 S.Ct. at 1038-39. In satisfying this burden of proof, the defendant need not "specify the points he would raise were his right to appeal reinstated." Id. at 486, 120 S.Ct. at 1039-40. On the other hand, although the defendant may prove deficient performance by showing that he demonstrated to counsel his interest in an appeal, he cannot rely on this evidence solely to establish that, "had [he] received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Id. at 486, 120 S.Ct. at 1039.

Medina is citing, as evidence of deficient performance, to his own testimony that he had (1) expressed dissatisfaction about his sentence to his counsel and (2) preserved objections to sentencing rulings that he claimed he wished to challenge on appeal. Moreover, he argues, Saul conceded that he was sure that Medina would have wanted to seek the lowest possible sentence on appeal. On the other hand, the court noted Saul's testimony that post-sentencing he had informed Medina's brother that he did not think there were any issues that had merit.

Regardless, we need not determine whether Saul's failure to consult with Medina constituted deficient performance because Medina has failed to establish the prejudice-prong in Roe, that is, that there is a reasonable probability that, but

16

for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. See Roe, 528 U.S. at 484, 120 S.Ct. at 1038-39. Although Medina has now testified that he wished to timely appeal his sentence and has cited to issues that he believes would have been meritorious, or at least arguable, on appeal, he has conceded that he understood the district court's advice that he had to file an appeal, if at all, within ten days of the imposition of sentence. Medina also agreed that the court informed him that, if he could not afford counsel, the court would appoint him appellate counsel.

Furthermore, whether or not Medina had trouble contacting Saul post-sentencing, he has conceded that he always could contact his brother and failed to explain why he could not have asked his brother either to hire alternative counsel or notify the court of his desire to appeal. Indeed, Medina did not file the instant § 2255 motion, arguing ineffective assistance of counsel and seeking to file a belated direct appeal, until August 23, 2004, more than a year after the court entered his judgment of conviction on August 22, 2003. Additionally, as the district court observed, Medina's filing of this § 2255 motion occurred only after the Supreme Court issued its decision in Blakely, which Medina also relied upon in seeking § 2255 relief, and which we have concluded is not applicable to cases on collateral review. See Varela, 400 F.3d at 866-68. Thus, after examining

17

Medina's ineffectiveness claim in light of all of the evidence, he has failed to establish prejudice. See Strickland, 466 U.S. at 695, 104 S.Ct. at 2069 (explaining that a court hearing an ineffectiveness claim must consider the totality of the evidence).

Accordingly, we conclude that the district court did not err in denying Medina's claim of ineffective assistance of trial counsel. We, therefore, affirm.

**AFFIRMED.**