**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| DARRYL STEVENSON, Jr., | No. 09-15081 |
| Petitioner - Appellant, | D.C. No. 1:07-cv-00515-ALA |
| v. | |
| JAMES A. YATES, Warden, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Arthur L. Alarcon, Senior Circuit Judge, Presiding

Argued and Submitted November 29, 2010
San Francisco, California

Before: SCHROEDER, THOMAS, and GOULD, Circuit Judges.

Darryl Stevenson, Jr., a California state prisoner, appeals the district court's

denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his jury

conviction of murder with a firearm based on aiding and abetting.

---

     [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Petitioner was the driver of the truck from which, on the passenger's side, were fired the shots that killed Burnest Williams. The prosecutor did not turn over an audio tape and transcript of the Fresno Police Department's interview of Kelly Reaves until after trial. Reaves was one of the main witnesses at trial. The court denied petitioner's motion for new trial finding there was nothing materially exculpatory in the tape.

Evidence is considered material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-34 (1995). Reaves' statements are hard to follow. There was an inconsistency between Reaves' testimony and the tape transcript: at trial Reaves testified the truck came straight at Williams while Reaves' interview transcript reflects he saw there was a "turn." Petitioner argues this corroborates his testimony that he was trying to get away. But the statement does not indicate a "u-turn" and the trial court observed it could also be read in another way, i.e. a turn to facilitate the shooting. The tape was not clearly exculpatory. Petitioner failed to show that there was a reasonable probability that Reaves' statements during police questioning would have changed the result. Furthermore, because the California Court of Appeal's analysis was not an

2

objectively unreasonable application of *Bagley*, we must defer to its finding that the evidence was not material.  28 U.S.C. § 2254(d).

Petitioner also claims ineffective assistance of counsel, but the representation of petitioner's trial attorney was vigorous and did not fall "below an objective standard of reasonableness."  *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (internal quotation marks omitted)).

**AFFIRMED**.

*Stevenson v. Yates*, No. 09-15081

GOULD, J., dissenting:

I respectfully dissent. I would hold that the state's failure to disclose exculpatory evidence constituted a *Brady* violation sufficiently clear to warrant relief under the AEDPA.[1] *See Brady v. Maryland*, 373 U.S. 83 (1963). Stevenson is entitled to a new trial at which his counsel would be free to argue the significance of the audiotape and transcript of the police interview of Kelly Reaves, who was an important trial witness.

Stevenson was convicted of aiding and abetting a murder. He was driving a truck when his passenger, John Shepheard, shot the victim, Burnest Williams. The shooting by Shepheard was obviously intentional and aimed at killing the victim. The crux of the issue for the state court jury was whether, as the driver of the vehicle, Stevenson had intended to place the car in the vicinity of the victim to facilitate Shepheard's shooting of Burnest. Stevenson was convicted after trial testimony including that of Kelly Reaves, for the prosecution, in which Reaves indicated that Stevenson had driven his car directly at the victim, and indeed had struck the victim with the car. After the jury had convicted Stevenson, the

---

[1] Because I would grant relief under *Brady*, I do not reach the issue of ineffective assistance of counsel.

1

prosecution tendered a belatedly discovered audiotape, recorded shortly after the incident, which contained an interview of Reaves by the police. Stevenson sought a new trial, contending that the audiotape was exculpatory information that should have been produced before trial by the prosecution. The tape was found after trial by a policeman who was cleaning out his desk: there was no suggestion of intentional, bad faith non-production. But *Brady* doesn't require intentional withholding of information. *See Strickler v. Greene*, 527 U.S. 263, 288 (1999) ("[A]n inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment."). Negligent non-disclosure permits relief so long as there is a reasonable probability that a pretrial disclosure would have changed the result. *E.g.*, *Banks v. Dretke*, 540 U.S. 668, 699 (2004) ("[Defendant] must show 'a reasonable probability of a different result.'") (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The question before us is whether there is a reasonable probability that the jury would not have convicted Stevenson of aiding and abetting the murder if the audiotape of Reaves's interview had been disclosed prior to trial. Stevenson argues that Reaves's testimony at trial differed from Reaves's statements to police as recorded on the audiotape. On the audiotape, Reaves appeared to indicate that Stevenson turned his car to avoid running down the victim; but at trial Reaves

2

testified, and the prosecution emphasized, that Stevenson drove directly at the victim.

The key part of the audiotape, for which we, in our record, have only the transcript, contains this language by Reaves:

> DETECTIVE: [H]ow fast do you think the car was going?
>
> REAVES: See that's when . . . I . . . quick . . . it's like a peel-out . . . I don't know if it was a stick or . . . or . . . you know what I'm saying, aut—an automatic. It had power . . . 'cause when he hit . . . from me . . . not to . . . you know what I'm saying . . . when he . . . when . . . when . . . we seen him with the, you know . . . it looked like he just wanted to turn off, you know. Turn into the lane and just take off?
> . . . .
> . . . [I]f he would have hit us . . . like . . . like this . . . we both would have been on the ground. What it is, he turned it . . . and as he turned it . . . we hit the . . . where the light and the bumper . . . but see that . . . that . . . that truck had a . . . railing on it too. On the front, and on the side. You know, the little . . . bar run . . . stepping bar railing? . . .
> . . . .
> It . . . it got a grill too. It got the front grill . . . like . . . like, and then it got the little bars in . . . on the side, where you can step up on . . . to the ahm . . . truck. If . . . if he would have hit us front on . . . we . . . we'd both been killed. But, when he turned it . . . he would have . . . he would have to hit that washing machine I hit, you know what I'm saying . . . for him to get up outta there.

Excerpts of R. 2:37–38.

It is possible one might consider the language of the audiotape to be ambiguous. Maybe Stevenson turned the truck because he encountered people crowding the street while he was trying to exit the area, or maybe Stevenson turned the truck to give his

3

passenger a better angle for a shooting. Such matters are in the province of the jury. In either case, it seems clear from the audiotape transcript that Stevenson turned the truck, a fact which undermines the prosecution's theory at trial. *See* Opening Br. 19 ("Mr. Stevenson drove the car at them. The testimony was it was driven directly at them. . . . He punched it and went directly at the victims in this case.") (quoting Rep.'s Tr. 632:13–17). Whatever I may think about what may happen in some cases involving street violence or drive-by shootings, this appeal must be decided on the precise facts of this case. Stevenson was entitled to be presumed innocent, and Stevenson's lawyer, if he had received the audiotape, was entitled to present his most vigorous defense with that audiotape supporting his client's views. Stevenson himself testified at trial that his aims were innocent in trying to get out of the area, that he didn't know his passenger was going to shoot the victim, and that he had to turn because the street was blocked by a gathering crowd. As an appellate court, we are not in a position to make an assessment of whether Stevenson's view was correct or the prosecution's view was correct. That decision was for the jury. In my view, Stevenson was entitled at trial to have his lawyer armed with the audiotape which at least arguably contradicted the trial testimony of the state's key witness and lent some support to Stevenson's self-exculpatory testimony.

4