# CIRCUIT COURT OF FAIRFAX COUNTY

Daniel Galdamez

v.

Harold W. Clarke,
Director, Virginia
Department of Corrections

December 30, 2014

Case No. CL-2014-11228

By Judge Jane Marum Roush

This matter is before the court on the petitioner's Petition for Habeas Corpus and the respondent's Motion to Dismiss. For the following reasons, the court will grant the petitioner a hearing on his petition.

The petitioner is Daniel Galdamez. Mr. Galdamez is not a Unites States citizen. In 2013, Mr. Galdamez pleaded guilty in the General District Court of Fairfax County to one count of driving while intoxicated and one count of hit and run, both misdemeanors. In his petition, Mr. Galdamez prays that the convictions resulting from his guilty pleas be vacated because of the ineffective assistance of his trial counsel. Specifically, Mr. Galdamez alleges that his trial counsel failed accurately to advise him of the consequences of the convictions on his ability to retain his "Temporary Protected Status" that allows him to remain in the United States.

*Factual Background*

The record in this case reveals the following facts.

Mr. Galdamez was born on February 5, 1987, in El Salvador. He immigrated to the United States in 2000 when he was thirteen years old. He is now twenty-seven years old, married, with an infant daughter who was born in the United States and thus is a United States citizen. Mr. Galdamez works as a painter. Mr. Galdamez is not a Unites States citizen. He has

been granted "Temporary Protected Status" ("TPS") from U.S. Citizen and Immigration Services ("USCIS"), an agency of the Department of Homeland Security.

According to the Department of Homeland Security's website:

> The Secretary of Homeland Security may designate a foreign country for TPS due to conditions in the country that temporarily prevent the country's nationals from returning safely, or in certain circumstances, where the country is unable to handle the return of its nationals adequately. USCIS may grant TPS to eligible nationals of certain countries (or parts of countries), who are already in the United States. Eligible individuals without nationality who last resided in the designated country may also be granted TPS.

*See* http:// www.uscis.gov/ humanitarian/temporary-protected-status-deferred-enforced-departure/ temporary-protected-status#What is TPS, last accessed December 29, 2014. El Salvador has been designated a foreign country for TPS. *Id.*

On August 25, 2013, at about 9:00 p.m., a vehicle driven by Mr. Galdamez pulled out of a parking lot near 8101 Alban Road in Fairfax County and struck a vehicle that was traveling in the northbound lanes of Alban Road. The damage to the second vehicle was estimated to be about $2000.00. The driver of the second vehicle was not injured.

Mr. Galdamez initially fled the scene of the accident. He was, however, persuaded by a friend to return to the scene. His friend drove him back to the scene of the accident. The respondent, in its Motion to Dismiss, stated that Mr. Galdamez drove himself back to the accident scene. The prosecutor, in his affidavit, testified that the friend returned Mr. Galdamez to the scene. The arresting officer wrote in his criminal complaint that "The friend drove him back to the scene." Mr. Galdamez returned to the scene before the police arrived. The respondent, in its Motion to Dismiss, stated that Mr. Galdamez got back to the scene after the police had departed and that the police returned when they were told that Mr. Galdamez had returned. That statement appears to be based on Mr. Gaarder's affidavit. However, the arresting officer wrote in his criminal complaint "The suspect had actually returned before I arrived at 2136 hrs." Mr. Galdamez also testified that, "[i]n fact, I was present at the scene of the accident when the police arrived." Galdamez affidavit at p. 1. The responding police officer deemed Mr. Galdamez to be "obviously drunk." He was arrested and charged with felony hit and run and driving while intoxicated. His subsequent breath test revealed a blood alcohol content of .09 grams per 210 liters of breath.

Mr. Galdamez retained attorney Conrad Gaarder to represent him. Mr. Galdamez told Mr. Gaarder that he was not a United States citizen and was concerned that he might lose his TPS and be deported from the United States if he were convicted of the charges.

The assistant commonwealth's attorney prosecuting Mr. Galdamez's cases offered to reduce the felony hit and run charge to a misdemeanor if Mr. Galdamez would plead guilty to the DWI charge and the misdemeanor hit and run charge and serve a brief jail sentence.

Mr. Galdamez testified (via an affidavit) that Mr. Gaarder advised him that, were Mr. Galdamez to accept the plea agreement, his TPS would not be adversely affected. "Mr. Gaarder indicated to me that, since both offenses occurred at the same time, that Immigration would consider the two convictions as a single conviction. Mr. Gaarder advised me that I would not lose my TPS status as I would not have two misdemeanor convictions for immigration purposes." Galdamez affidavit, at p. 1.

In his affidavit, Mr. Gaarder testified that he has "no specific recollection of any conversation I had with the Petitioner in relation to his plea of November 25, 2013." Nevertheless, Mr. Gaarder knew long before that date that a person granted TPS would be denied a renewal of that status if convicted of two misdemeanors. "While I do not recall any conversation I had with the Petitioner, I am certain that I would have advised him of this fact." Mr. Gaarder added:

> While I do not recall any conversation I had with the Petitioner, it is not impossible that I may have wondered aloud whether any argument could be made concerning the fact that both misdemeanors arose out of the same event. But I reiterate that I do not recall having said that, but [I] do not want to allege that the Petitioner incorrectly recalls the conversation to the extent that I may have wondered aloud if such an argument could be made.

Gaarder affidavit, at ¶ 5. In addition, Mr. Gaarder averred:

> I am absolutely sure that, while I do not recall any conversation I had with the Petitioner, I did not tell him that his Temporary Protective Status would not be in jeopardy. On the contrary, I am quite sure that I would have told him that it would be.

Gaarder affidavit, at ¶ 6.

On November 25, 2013, Mr. Galdamez pleaded guilty to DWI and received a ninety-day suspended sentence and a twelve-month loss of his operator's license. He was granted leave to petition for a restricted operator's license after sixty days. On that same day, Mr. Galdamez pleaded guilty to misdemeanor hit and run. He was sentenced to 180 days in jail, with 170 days suspended. He was allowed to begin his ten-day jail sentence on December 6, 2013.

On December 16, 2013, Mr. Galdamez received a notice from USCIS that his TPS was going to be revoked because of his two misdemeanor convictions. Mr. Galdamez's TPS was in fact later revoked, and he is now facing deportation.

*Discussion of the Law*

A conviction for a felony or two or more misdemeanors will render an alien ineligible for Temporary Protected Status. 8 C.F.R. § 244.4(a). The two offenses to which Mr. Galdamez pleaded guilty met the definition of misdemeanors. 8 C.F.R. § 244.1. There is no exception for two or more misdemeanors arising out of the same occurrence.

Before deciding whether to plead guilty, a defendant facing the loss of his or her liberty is entitled to the effective assistance of competent counsel. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

To determine whether counsel's representation was ineffective to the extent that the defendant was denied his constitutionally-protected right to counsel, the court must apply the two-pronged test enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984). First:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Secondly, "[c]onflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* at 693. To prove prejudice:

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.

In *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010), the United States Supreme Court held that counsel's representation of a

noncitizen criminal defendant is constitutionally deficient if the client is not informed of the risk that a conviction might result in deportation. Of course, the duty to advise a client of the immigration consequences of a guilty plea requires that the advice given be legally correct.

In order to satisfy the "prejudice" requirement of the *Strickland* test, a defendant who pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Where the petitioner pleaded guilty, a showing of prejudice is not made by the mere allegation that the petitioner, if properly represented, would have rejected the plea agreement and gone to trial. As the United States Supreme Court noted in *Padilla*: "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372, *citing Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000).

## *Discussion*

It is legally incorrect that convictions for two misdemeanors arising from the same occurrence will be treated as one conviction by USCIS for the purpose of an alien's retention of his or her TPS. Thus, if Mr. Galdamez's testimony is true about the substance of the advice he received from his trial counsel, he has satisfied the first prong of the *Strickland* test.

In addition, Mr. Galdamez has a colorable claim of "prejudice" under *Strickland*. He testified that "If I had known of the immigration consequences of the plea agreement, I would have rejected it and taken my case to trial." Galdamez affidavit, at p. 2.

If Mr. Galdamez had been properly advised, his decision to reject the plea agreement and go to trial would have been rational. Mr. Galdamez had a viable defense to the hit and run charge. He returned to the scene of the accident promptly at the urging of his friend, arriving back even before the responding police officer arrived. It is possible that the fact finder, under the totality of the circumstances, would have acquitted Mr. Galdamez of the hit and run charge. In that event, Mr. Galdamez would have been convicted at best of the DWI charge, a single misdemeanor that would not have caused a revocation of his TPS.

Given that Mr. Galdamez's primary concern was his ability to stay in the United States with his wife and daughter, it would have been a rational decision for him to plead "not guilty" and go to trial in the hopes of being acquitted on the felony hit and run charge, even though a felony conviction carried the risk of incarceration for a period much longer than the ten days contemplated in the plea offer. As the United States Supreme Court observed in *Padilla*, "deportation is an integral part — indeed,

sometimes the most important part — of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla*, 559 U.S. at 364 (internal footnote omitted).

## Conclusion

For the foregoing reasons, the court will grant Mr. Galdamez a hearing on his petition so that the factual dispute about the specific advice he received can be resolved after the court has had an opportunity to observe the witnesses and their demeanors and make determinations as to their credibility.